JACKSON *v.* FOSTER.

4-4328

Opinion delivered May 11, 1936.

*Jeff R. Rice* and *J. T. McGill,* for appellants.

*Bernal Seamster,* for appellee.

MEHAFFY, J. This action was begun by appellees, who are residents and owners of real property in Paving District No. 1 in the city of Bentonville, Arkansas, against the appellants for a restraining order, restraining appellants from wrongfully using State Aid Funds, and from discriminating between real property-owners in said improvement district.

The appellees' property is not located on the State highway. The improvement district owes approximately $54,000 bonded indebtedness. This indebtedness is a lien on all the real property in the improvement district. The State of Arkansas delivered to the commissioners of said district $30,385.33 State Aid Bonds to be used as provided by law. The commissioners have applied $4,000 of said bonds to the reduction of the bonded indebtedness.

On August 15, 1935, the commissioners of said district adopted the following resolution:

"Whereas, the State of Arkansas has provided for the payment of the cost of paving State highways, improved by improvement districts in the State of Arkansas; and,

"Whereas, in Paving Improvement District Number One of the city of Bentonville, Arkansas, all of Central Avenue lying in the limits of said Paving Improvement District No. One is a State highway, and by reason of the improvement of said State highway on said West Central Avenue and East Central Avenue, the State Refunding Board has issued and delivered to the commissioners of said paving improvement district the sum of $30,385.33, in State Aid Certificates; and,

"Whereas, the Board of Improvement of said Paving Improvement District No. One is of the opinion that the said State Aid Bonds were intended to be used and applied by the commissioners of said district for the purpose of relieving the property-owners in said district fronting upon State Highways Nos. 71 and 72, located in said paving district, and that the real property-owners located on said West Central Avenue and East

Central Avenue and lying within said Paving Improvement District No. One, should be the beneficiaries of said payment in bonds by the State of Arkansas.

"Now, therefore, be it resolved by the Board of Commissioners of Paving Improvement District No. One of the city of Bentonville, Arkansas, that said State Certificates be used and expended for the purpose of paying off the assessment of benefits of the real property-owners fronting upon said Highway 71 and No. 72 and lying within the limits of said improvement district, and that the real property located in said paving improvement district and not located on either of said State Highways 71 and 72 are not entitled to share in the benefits derived or to be derived from said State Bonds or State Certificates received and held by the commissioners of this district.

"Passed, approved and adopted, this 15th day of August, 1935.

   "Approved: (Signed) John B. Applegate,
    "Chairman of Board of Commissioners.
 "Attest: (Signed) W. E. Jackson, Secretary."

The appellants filed answer, and the case was tried on the following agreed statement of facts:

"It is agreed that plaintiffs are resident property-owners and own the real property set forth in the petition. That same is within the confines of Paving Improvement District No. 1, and it is further agreed that no part of said real estate is located on a State highway or continuation thereof. That assessment benefits against the real estate of plaintiffs have been made and are now in force by reason of the creation of said district. That W. E. Jackson, John B. Applegate and J. W. Blocher are the commissioners of said district, and at the present time said district is indebted in the sum of $54,000 for borrowed money, and that said commissioners received the sum of $30,385.33 par value State aid bonds, bearing three per cent. interest from January 1, 1934, and which bonds were issued in accordance with the statutes enacted by the General Assembly of the State of Arkansas providing for State aid to municipal improvement districts improving State highways, and

that the commissioners have sold and applied $4,000 of said State aid bonds toward the reduction of its indebtedness.

"It is agreed that the resolution set forth prior hereto was adopted by the Board of Commissioners, and that the properties of the plaintiffs are not located on a continuation of State highways in said district.

"It is agreed that the commissioners are carrying out the purpose and intention of said resolution to give the equitable benefits received from State aid bonds to the real property located on the State highways in said district, and are thereby lowering annual collection benefits levied against the real property located on said State highways in said district, and that said commissioners are not making any reduction of the benefit assessments levied against the real property of plaintiffs. That it is the intention of said commissioners to sell or exchange said State aid bonds, as provided by act No. 166 of the legislative acts of the State of Arkansas, and apply same to the reduction of the bonded indebtedness of said district and are extending to the real property-owners fronting upon the State highways in said district the equitable benefits of such reduction to the exclusion of real property not on said State highways and which latter property is in said district.

"It is agreed that the total benefits assessed in said district amount to $175,000; the benefits assessed against Central Avenue property, which is the property fronting upon said State highways in said district, amounts to $97,500; that the total cost of the paving in the district was $72,696; that the total cost of the paving of Central Avenue aforesaid, as determined by the State highway engineers, was 39.84 per cent. of the total cost, or $29,966.08; that the total bond issue of said district was $77,500; that the Central Avenue real property fronting upon State highways was obligated to pay approximately 55 per cent. of the total cost of the bond issue; the balance of the district not on State highways was obligated to pay approximately 45 per cent. of the bond issue. That there was paid for improving said

Central Avenue 39.84 per cent. of the total cost of the entire improvement in said district.

"It is agreed by the parties hereto that no attack is made or can be made upon the original assessment of benefits on all of the property in said district.

"It is agreed that the plat of the district showing the location of improvements upon the streets of said district and boundaries of the district is made a part of this agreed statement of facts."

There is only one question for our consideration and that is whether the fund received by the commissioners of the district from the State is for the benefit of those property-owners whose property joins the State highway, or whether it is for the benefit of the property-owners of the entire district, whose property was assessed to pay for the improvements including the State highway.

Our attention is called to the several acts of the Legislature beginning with the Harrelson act, which is act No. 5 of the Acts of Spec. Sess. of 1923. These acts of the Legislature have been reviewed by this court several times, and it would serve no useful purpose to review them again. See *Board of St. Imp. Dist. No. 315* v. *Arkansas Highway Comm.*, 190 Ark. 1045, 83 S. W. (2d) 81; *Smith* v. *Refunding Board of Ark.*, 191 Ark. 1, 83 S. W. (2d) 76; *Ledbetter* v. *Hall*, 191 Ark. 791, 87 S. W. (2d) 996.

Appellants' contention is that the benefits arising from the sale of State aid bonds should extend only to the owners of real property which is adjacent to or fronting upon the State highway. Appellants quote from act 85 of the Acts of 1931 to sustain their contention. That act provides, among other things, that where a district has improved a thoroughfare that is a continuation of State highways into or through some incorporated town or city, and has also improved another thoroughfare that was not a continuation of a State highway into or through such town or city, then it shall be the duty of the State Highway Commission to have engineers of the State Highway Department estimate the per cent. of the value of the improvement made by the

district on highways that are continuations of State highways, and the per cent. of the value of the improvements expended on thoroughfares that are not continuations of State highways. The act provides that when the engineers have furnished the information to the highway commission, it shall agree to pay a proportionate part of the maturing bonds and interest of such improvement district.

That provision in the statute is manifestly for the purpose only of determining the amount to be donated to the district; but when that amount is determined in the manner provided by law, the sum paid is to the entire district and not to the property-owners whose property fronts upon the State highway. In all the acts it is provided that the State aid shall be paid to the district and not to any particular property-owners. The property-owners who have property that is not adjacent to or near the State highway pay for the construction of the State highway the same as those property-owners pay whose property is adjacent to or fronts upon the State highway.

The agreed statement of facts shows that the assessment benefits against the real estate of the appellees, have been made and are now in force by reason of the creation of said district. Every property-owner within the district is assessed according to the benefits to his land, whether his land is on the State highway or not. In other words, all the property in the district is assessed to pay for the construction of the State highway, and under the law must be assessed according to the benefits accruing to the land. The statute itself not only provides that the money shall go to the district, but it would be inequitable and unjust to pay the owners of a portion of the land in the district, and not pay other persons whose property is assessed to pay for the improvements.

It was manifestly the intention of the Legislature to protect and assist the property-owners of the improvement district, and the intention that each property-owner should benefit in proportion to the assessment on his property.

The indebtedness of the district is an obligation and lien against all the property in the district, and not simply against the property adjacent to the State highway.

The chancery court enjoined the commissioners from using the funds of the district for the benefit only of property-owners of said district owning property on the continuation of State highways, and restrained the commissioners from lowering benefit assessments on property-owners located on State highways in said district.

The decree of the chancery court is correct, and it is therefore affirmed.