LEDBETTER *v.* HALL.

4-4149

Opinion delivered November 18, 1935.

*June P. Wooten* and *John W. Newman,* for appellant.

*Graham R. Hall* and *Cockrill, Armistead & Rector,* for appellees.

*Walter L. Pope, Abe Collins* and *Rose, Hemingway, Cantrell & Loughborough,* amici curiae.

MEHAFFY, J.  The appellant, a property owner in Street Improvement District No. 508, city of Little Rock, which is a municipal improvement district, organized under the ordinances of the city of Little Rock, for the purpose of paving certain streets, about 5¼ miles in length, filed suit against the appellees in the Pulaski Chancery Court, to restrain said appellees, their attorneys, agents, servants and employees, from undertaking to comply with the order of the State of Arkansas Refunding Board, and to restrain appellees from selling any of the refunding obligations at a price that would yield less than par.  The suit was brought by appellee for his benefit and for the benefit of all other real property owners, similarly situated.

The complaint is quite long, and we do not think it necessary to set it out in full.

The appellees filed a demurrer which the court sustained, and the appellant elected to stand on his complaint, refused to plead further, and the complaint was dismissed for want of equity.  The case is here on appeal.

The complaint and exhibits allege and show that the street which Street Improvement District No. 508 was organized to improve, is a continuation of State Highway No. 10.  Said district, on March 1, 1930, issued and sold bonds in the sum of $534,000, with 5 per cent. interest coupons attached.  Assessment was levied on the lands of the district, held in annual installments, and the bonds maturing in annual amounts until the year 1940.  The district had received from the State certificates of indebtedness amounting to $661,321.91.  It deposited these certificates with the State of Arkansas Refunding Board, and the Refunding Board, on July 9, 1935, delivered to the improvement district State of Arkansas Refunding obligations, or certificates of indebtedness, in the sum of $428,000, which was the amount of the district's unmatured and unpaid costs as of January 1, 1934, said issue being described as follows:

"400 State of Arkansas Refunding Obligations or Certificates of Indebtedness in denominations of $1,000 each, numbered M-2945 to M-3344, inclusive, each bear-

ing interest at 3 per cent. per annum, payable January 1 and July 1 of each year, and the principal maturing January 1, 1944;

"56 State of Arkansas Refunding Obligations or Certificates of Indebtedness in denominations of $500 each, numbered D-4987 to D-5042, inclusive, each bearing interest at 3 per cent. per annum, payable January 1 and July 1 of each year, and the principal maturing January 1, 1944." The district, in compliance with act 166 of 1935, advertised in the Arkansas Gazette and Arkansas' Democrat for tenders to the district for the purchase of its bonds. It received but one response, which was an offer to sell $20,000 at par, plus accrued interest. The commissioners of the district then offered for sale the district's State of Arkansas refunding obligations. The highest bid received was 77 cents on the dollar.

Thereafter, the district filed a report of its proceedings with the Refunding Board, and asked authority of the board to sell the $428,000 refunding obligations at the highest and best price that could be secured for the purpose of paying the district's indebtedness, so far as the proceeds would go. The Refunding Board, after a hearing of the report and petition, entered an order authorizing and empowering the district to sell the State of Arkansas refunding obligations at the best price obtainable in the market.

The complaint alleges that it was the intention of the Legislature that the refunding obligations should be in full liquidation of the indebtedness as of January 1, 1934. It is alleged that, if the refunding bonds are sold at less than par, a large portion of the bonded indebtedness of the district would be left unpaid, and a continuation of the taxes would be in violation of the intention of the Legislature.

The only questions for our consideration are, as stated by appellant, "the interpretation of act 166 of the Acts of 1935, and the validity of an order of the Refunding Board of September 4, 1935."

Attention is called by the parties to the several acts passed by the Legislature beginning with the Harrelson

act, which is act No. 5 of the Acts of 1923. These acts are considered for the purpose of arriving at the meaning and purpose of act 166 of 1935.

It is a matter of common knowledge that, when the 1923 act was passed, improvement districts had been formed all over the State, the property within said districts was assessed for the purpose of paying bonds or indebtedness of the district, and the indebtedness of practically all the improvement districts in the State had become so burdensome that the property owners could not pay their assessments.

It was the manifest intention of the Legislature in all these acts to give the property owners in the districts mentioned relief, to give them such assistance as would enable them to pay the assessments and save their lands.

We said in a recent case: "It was the manifest purpose of the Legislature to relieve the owners of real property from taxes on assessed benefits levied for the purpose of constructing streets in cities and towns which form continuations of State highways. * * * The State had the right to pay so much of the indebtedness of municipal improvement districts as it pleased. It was under no obligation to pay any of it." *Board of Street Improvement District No. 315* v. *Ark. Highway Commission*, 190 Ark. 1045, 83 S. W. (2d) 81.

In construing statutes, we should give effect to the intention of the Legislature. We said: "It is beyond question the duty of courts in construing statutes to give effect to the intent of the law-making power, and to seek for that intent in every legitimate way. But * * * first of all in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation." *Refunding Board of Ark.* v. *Bailey*, 190 Ark. 558, 80 S. W. (2d) 61.

These statutes were also construed in *Smith* v. *Refunding Board of Arkansas*, ante p. 1.

In speaking about the construction of statutes, 59 C. J. states the rule as follows: "For the purpose of construction, resort may be had not only to the language

and arrangement of the statute, but also to the intention of the Legislature, the object to be secured, and to such extrinsic matters as the circumstances attending its passage, the sense in which it was understood by contemporaries, and its relation to other laws. * * * A rational, rather than an arbitrary construction is to be accorded all statutes. The court must consider the rule of public policy, that all laws shall be certain in their terms and applications." 59 C. J. 944.

"While the intent of the Legislature is to be found primarily in language of the statute, where such language is vague, ambiguous or uncertain, the court may look not only to language, but to the subject-matter of the act, the object to be accomplished, or the purpose to be subserved; it may also look in this connection to the expediency of the act or its occasion and necessity, the remedy provided, the condition of the country to be affected by the act, the consequences following upon its enactment, or various extrinsic matters which throw some light on the legislative intent." 59 C. J. 959-960.

The commissioners of the district, in this case, were unable to pay the bonds of the district, unable to sell the refunding bonds, and the situation was such that it was impossible to make any arrangement by which they could be relieved from the entire indebtedness. It was certainly not the intention to deprive the taxpayers of some relief because they could not get all.

Act 166 of the Acts of 1935 is entitled "An Act to Facilitate the Payment of Bonded Debts of State Improvement Districts Entitled to State Aid, and for Other Purposes." It authorizes the commissioners of municipal improvement districts to advertise for tenders. The complaint shows the district did this. The act also authorizes the commissioners to negotiate for the sale of State of Arkansas refunding obligations, if they can sell said refunding obligations at a price equal to or greater than the price at which their own bonds are tendered to them. The law authorizes them to sell the refunding obligations and use the proceeds in purchasing the district bonds so tendered. The act, however, also provides that, in case any district is unable to sell or exchange its refunding

obligations on the terms mentioned in the act, it may then apply to the Refunding Board for aid in refunding its own bonds, in which event the Refunding Board may investigate the financial status of such district and recommend a settlement between the district and its bondholders, which may be made.

If the Refunding Board could not recommend a settlement, as it did in this case, could not recommend any settlement except for the sale of the bonds for par, it would be perfectly useless to apply to the Refunding Board, because the commissioners themselves are given express authority to sell if they can get par. If the Refunding Board cannot recommend a settlement other than the sale of the bonds at par, then the clause with reference to making application to the Refunding Board and the Refunding Board recommending a settlement would not mean anything.

In construing statutes, courts are not only required to get at the intention of the Legislature, and give effect to that intention, but effect must be given to every part of the act.

"It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every section, clause, word, or part of the act." 25 R. C. L. 1004.

As we have already said, to hold that the Refunding Board could not make any settlement or recommend any settlement except where the bonds sold for par, the part of the statute to which we have called attention would not mean anything.

It is earnestly insisted, however, that the word "settlement," used in the statute, contemplates a final settlement; a settlement of the district's indebtedness, thereby relieving the burdened property in the district. It is contended that if the refunding obligations are sold for an amount less than that required to pay the district's bonds, this would not be a settlement, but simply a payment upon account.

The word "settlement" does not necessarily mean payment or satisfaction, though it may mean that. It frequently means "adjustment, arrangement." *Beall* v.

*Hudson County Water Co.,* 185 Fed. 179; *Austin Bros. Bridge Co.* v. *Love,* (Tex. Com. App.), 34 S. W. (2d) 574.

If act 166, in providing that the commissioners may apply to the Refunding Board, and the Refunding Board may recommend a settlement, is given any effect at all, it would authorize advising the settlement which it did in this case, and, if so advised, the law expressly provides that such settlement may be made.

We are of opinion that the chancellor correctly sustained the demurrer, and the decree is therefore affirmed.

BUTLER, J., (dissenting). The question presented is whether under act No. 166, approved March 21, 1935, a municipal improvement district has the right, with the approval of the Refunding Board, to dispose of refunding obligations issued to it after the passage of said act for less than par or for an aggregate sum which will not completely pay off the outstanding bonds of such district.

The State of Arkansas has donated to the district four hundred and twenty-eight thousand ($428,000) dollars of its bonds, a sum equal in amount to the present outstanding bonded indebtedness of the district. This being a gratuity, the State, of course, has the power to limit and define the manner in which its refunding obligations may be used by the commissioners of the district. Act 166 provides: "They are authorized to negotiate for the sale of Arkansas refunding obligations, * * * and if they can sell said State of Arkansas' refunding obligations at a price equal to, or greater than, the price at which their own bonds are tendered to them, then they may sell said * * * obligations and use the proceeds in the purchasing of bonds of the district so tendered. * * * The commissioners of all such districts shall have the authority to exchange their State * * * obligations at par for the bonds of the district, but said refunding obligations shall not be sold except by and with the consent of the commissioners * * *, provided, that in case any district is unable to sell or exchange its refunding obligations on the above terms, it may apply to the Refunding Board for aid in refunding its own bonds, in which event the Refunding Board may investigate the financial status

of such district and recommend a settlement between the district and its bondholders which may be made."

It is upon the interpretation of the last clause of the act quoted, *supra,* providing for an application by the district to the Refunding Board for aid in refunding its bonds, etc., that the majority bases its conclusion to the effect that, with the consent of the Refunding Board, the district may go upon the open market and sell the State's refunding obligations for the best price obtainable. The permission given the district to exchange the State's obligations at par for bonds of the district and the authority to sell said obligations at a price equal to, or greater than, the price at which its own bonds are tendered and from the proceeds thus obtained purchase its tendered bonds negatives the disposition of the bonds in any other manner. It is a cardinal rule of statutory construction that the intention of the Legislature is to be discovered from the language used in its enactments, and that the express mention of one thing implies the exclusion of the other. Clearly, it was the intention of the Legislature that the aid afforded the districts was for the purpose of completely discharging the indebtedness of such districts. It was not contemplated that the commissioners would in any state of case be authorized to sell the State's obligations on the open market for whatever price might be obtained, and there is nothing in the clause last quoted which, by any just implication, could give the district that authority. If the Legislature had intended to authorize the Refunding Board to permit the district to sell at less than par when it provided, if the Board of Commissioners was unable to exchange or sell the State's obligations at par, it might apply to the Refunding Board for aid in refunding its bonds, it would have said so in plain language, and for us to interpolate such authority into the statute would be no more nor less than legislating by way of judicial construction, which cannot be justified on the ground of expediency, as the majority seem to believe.

I therefore respectfully dissent to the opinion of the majority and am authorized to say that Mr. Justice Baker concurs in the views here expressed.