### SOHIO PETROLEUM CO. et al. v. JUREK et al.

No. 15336.

Court of Civil Appeals of Texas. Fort Worth.

April 4, 1952.

Rehearing Denied May 2, 1952.

Phillips & Langworthy, of Angleton, for appellants Mrs. Franklin R. Long and Mrs. Jessie Wolters.

M. S. Munson, Jr., of Wharton, for appellants Lola E. Bauer and husband, William Bauer, and John Sciba and wife, Annie Sciba.

Nicholson & Foreman, of Houston, Phillips & Langworthy, of Angleton, and Small, Small & Craig, of Austin, for appellants Sohio Petroleum Co. and Chicago Corp.

Black & Stayton, of Austin, for appellees.

CULVER, Justice.

Appellees Merle Jurek and her brother, H. M. Carlton, brought suit in trespass to try title to an undivided two-thirds interest in Lot 3–B, Block 64, of the townsite of Lane City, Texas. Trial was to a jury

and based on the verdict, judgment was rendered for appellees.

They are the children of Ruth and T. F. Carlton, having been born in 1914 and 1916, respectively. The family was residing in Oklahoma at the time of T. F. Carlton's death, intestate, on January 5, 1919, who left an estate consisting of a 70-acre farm and personal property. The widow immediately sold the personal property and moved with her children to Lane City, Texas, and on January 25, 1919, deposited the proceeds in the sum of $1,347 in the Wharton bank. Other deposits were shortly made in the sum of approximately $600 representing the sale of an automobile which belonged to T. F. Carlton and rents from the farm.

It is agreed that under the applicable provisions of the Oklahoma law the children of T. F. Carlton inherited an undivided two-thirds interest in the real and personal property owned by him, and his surviving widow a one-third interest. On March 25, 1920, Mrs. Carlton, for a consideration of $500 drawn from this account in the Wharton bank, purchased Lot 3-B as a home for her and her children and took the title in her name. The property has been continuously used as a homestead since that time. On December 27, 1921, Mrs. Ruth Carlton married A. A. Sciba.

On March 25, 1948, Mrs. Sciba, joined by her husband, executed an oil and gas lease to Frank Power, Jr., on this lot, purporting to cover the full leasehold interest in the property.

On February 13, 1949, Merle Jurek and H. M. Carlton executed a lease on the same property to one Hinchcliffe and others. The lease executed by Mrs. Sciba was transferred and assigned to appellants, Sohio Petroleum Company and The Chicago Corporation. The contention of appellees is that having inherited an undivided two-thirds interest in all the property left by their father, and the $500 purchase price for Lot 3-B having been paid out of the proceeds of the sale of their father's property, they owned the equitable title to two-thirds of the lot.

Appellants complain that the evidence is insufficient to show that the equitable title to an undivided two-thirds interest in Lot 3-B ever vested in Merle Jurek and H. M. Carlton, and that the evidence was further insufficient to support any ultimate issue necessary to sustain the judgment rendered in this cause. The transcript of the record of Mrs. Sciba's account with the Wharton bank is in evidence, which was closed on December 13, 1920. All of the money that was ever deposited in this account came from the estate of T. F. Carlton, and all seems to have been used ultimately to defray living expenses of the family, except the $500 which went for the purchase of the lot. It would seem, therefore, without any contrary intention being manifested, that the funds are traced with sufficient certainty, and that as two-thirds of the $500 purchase price belonged to these minors, an implied trust in the lot was created for their benefit. Brod v. First National Bank of Cameron, Tex.Civ.App., 91 S.W.2d 772; Spencer v. Pettit, Tex.Com.App., 2 S.W. 422.

The jury found in answer to the first special issue that the $500 used by Mrs. Sciba to purchase Lot 3-B was derived from the proceeds of the sale of personal property left by T. F. Carlton at his death. This issue is complained of as being evidentiary and it may well be, but no harm results, as in our opinion the fact is established beyond question by the bank records and other documentary evidence.

Appellants, having plead the ten and twenty-five year statutes of limitations, complain that the court refused to instruct the jury to find for the defendants on that count or to submit appropriate special issues to the jury.

The testimony indicates that these children had made no demand on their mother for an accounting nor had she ever repudiated nor denied their interest in the property or refused to account to them. They had lived with her on the premises during the greater period of their minority and had hardly known any other home until they left to earn their own living.

The evidence, which appellants say raises the fact issue of adverse possession on the part of Mrs. Sciba, consists solely of two circumstances. (1) She took title to the property in her own name and it so remained since that time. (2) She and her husband paid the taxes and rendered the property in the name of "A. A. Sciba and wife". The payment of the taxes during the childhood of appellees would seem to be a part of her obligation to support and maintain them. Carrying the property in the name of A. A. Sciba and wife would hardly evidence a claim to the lot as her separate property. Admittedly, Mr. Sciba claimed no interest in the property, either separate or community. In addition, the tax rolls show that Lot 4, owned by Mrs. Sciba as her separate property and paid for with funds inherited from her parents, was rendered at the same time and in the same way. Appellants further say that Mrs. Sciba testified "that she thought she was the owner of the property". We do not interpret it as being her testimony. When asked, "What was your idea as to who was the owner of that", she replied, "Well, I thought I was because I was guardian for the children, or felt like I was." In answer to another question which followed almost immediately, she replied that the children's part of the lot was "two-thirds".

On the contrary, there is the express testimony on the part of Mrs. Sciba that she never laid any claim to more than one-third, and that several times during the minority of the children she refused to assent to the desire of her husband to sell the property, asserting that two-thirds belonged to the children. Also, there is her testimony and that of the attesting notary to the effect that she made a similar statement to the lessee, Powell, at the time she executed the lease. The testimony of a party in interest may be disbelieved by the jury and standing alone would not support a directed verdict. Sigmond Rothschild Co. v. Moore, Tex.Com.App., 37 S.W. 2d 121. Nevertheless the rule does not apply where an uncontradicted witness is not adverse. Freudenstein v. Valley State Bank, Tex.Civ.App., 68 S.W.2d 567, error

refused. While Mrs. Sciba testified favorably for her children, and such testimony would be calculated to result in a slight gain to the family as a unit, actually Mrs. Sciba was testifying against her own interest and denying that she owned more than a one-third of the lot. We hardly think she was such an interested witness as would authorize the jury to disbelieve her positive and direct testimony.

Much space is devoted in the briefs of both appellants and appellees to a discussion of the doctrine of trusts. Appellants maintain that if a trust was created it was a constructive trust and limitations began to run at the time the cestui que trust could have taken action to enforce their equitable rights. Lang v. Shell Petroleum Corporation, Tex.Civ.App., 141 S. W.2d 667. On the other hand, appellees contend with equal vigor that the trust was a "resulting" one and limitations would run only from the date of repudiation by the trustee. Cole v. Noble, 63 Tex. 432. The distinction between these two forms of trust has caused considerable confusion. 54 Am.Jur., p. 22, § 5, p. 147, § 188. A resulting trust always carries the element, though implied, of the intention to create a trust, while a constructive trust arises by operation of law without reference to intent and is invoked to prevent fraud and injustice. 65 C.J., Trusts, § 14. Whether the trust be resulting or constructive in its inception, we have in the testimony an actual disavowal on the part of Mrs. Sciba that she ever at any time had any intention of claiming the whole property as her own.

In the light of the evidence, we believe no fact issue was raised as to the question of limitations.

Appellants complain of the court's refusal of their requested issue inquiring of the jury as to whether "Merle and H. M. have waived or relinquished any claim or title to Lot 3–B by agreeing with Mrs. Sciba that she was only obligated to settle with them out of the proceeds of any sale she might make". The jury was asked the following question, which they answered in the negative: "Do you find from a pre-

ponderance of the evidence that the understanding between H. M. Carlton and Merle Jurek with their mother Mrs. Sciba was that she would hold title to Lot 3–B until such time as she sold same and that she would only be obligated to settle with them out of the proceeds of any such sale?" We are of the opinion that this issue substantially submits to the jury the same question proposed by appellants in their requested issue. Rule 279, Texas Rules of Civil Procedure.

Appellants contend that since Lot 3–B has been combined with other tracts as a consolidated unit by declaration made by Sohio Petroleum Company and The Chicago Corporation, dated May 26, 1949, there was vested in each owner of a separate tract in the pool or unit a proportionate interest in every other tract in the unit, and therefore, as to Merle and H. M., the holders of these other tracts in the unit were innocent purchasers. We are of the opinion that the point is not well taken. Unitization is a conservation measure to permit economical and orderly development. The cases cited by appellants in support of their theory are: Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472; Belt v. Texas Co., Tex.Civ.App., 175 S.W.2d 622, writ refused; and French v. George, Tex.Civ.App., 159 S.W.2d 566, writ refused.

■ In the Belt case cited, different land holders had jointly executed a community lease. In a suit brought by one lessor to set aside this lease, it was held that all land owners were necessary parties. In the Veal case, the facts and holdings are similar to those in the Belt case, except for convenience, the several lessors executed separate instruments instead of all signing the same paper, which instruments, however, were identical as to terms and described, all of the tracts of land in the unitized block. In the French case, the holding was merely to the effect that where several owners of adjoining tracts unite in a single lease for the development of oil and gas as a single tract, the royalty must be divided among the lessors in the same proportion that the area of the tract owned by each bears to the total area covered by the lease. We are of the opinion that these cases are not in point and that the other land owners in this unit have acquired no such interest in Lot 3–B as to constitute them joint owners of the mineral interest thereunder.

In answer to a special issue, the jury found that Mrs. Ruth Sciba had not furnished to H. M. and Merle, between the years 1919 and 1948, money, goods and services out of her own funds or out of the funds belonging to the community funds of her and her husband Sciba sufficient to discharge any claims or demands that they might have against her arising out of a settlement of the T. F. Carlton estate. Appellants insist that such finding was contrary to the great weight and preponderance of the evidence.

■ The testimony discloses that these children received from their mother no gifts or sums of money but she did support and maintain them with the assistance of her present husband during their minority. Common experience would lead to the conclusion that during such time there was expended on the care, maintenance and education of the children more than $500, but the sums so expended cannot be offset against their claim to the portion of their father's estate to which they were entitled. Moore v. Moore, 89 Tex. 29, 33 S.W. 217. Mrs. Sciba was obligated to support and maintain these children to the best of her ability without drawing upon their funds so long as it was not necessary. Fidelity Union Ins. Co. v. Hutchins, Tex.Civ.App., 111 S.W.2d 292; Empire Mortg. Co. v. McFarland, Tex. Civ.App., 84 S.W.2d 892.

All points presented by appellants are overruled, and the trial court's judgment is affirmed.