Theodore JONES *v.* Charles D. RAGLAND and the
ARKANSAS DEPARTMENT OF FINANCE AND
ADMINISTRATION

87-75                                                           737 S.W.2d 641

Supreme Court of Arkansas
Opinion delivered October 19, 1987

*Theodore Jones*, pro se.

*Timothy J. Leathers, Kelly S. Jennings, John H. Theis, Robert Jones, Phillip Raia, Ann Kell*, and *Joe Morphew*, by: *Wayne Zakrezewski*, for appellee.

JACK HOLT, JR., Chief Justice. Because the appellant, Theodore Jones, failed to report and pay certain state taxes, he received an estimated tax assessment pursuant to an audit by the appellee, Department of Finance and Administration, hereafter called the Department. Jones appealed the assessment through administrative channels and then to chancery court where the chancellor found the final assessments proper. We affirm.

Jones operates A-1 Auto Salvage. He stopped reporting and paying state income tax in 1976, however, he continued to report and pay state sales taxes through 1981. When the Department attempted to conduct an audit, Jones refused to surrender his records. As a result, the Department filed suit in chancery court for production of the records and the chancellor ordered Jones to deliver. When he refused, Jones was held in contempt and placed in jail.

Thereafter, the Department assessed taxes against Jones in an estimated amount of approximately $143,000.00. Jones did not protest the assessments which resulted in the filing of certificates of indebtedness, the issuing of writs of execution, and the seizing of Jones' property for sale. Prior to the sale, Jones entered an agreement with the Department to produce his records and dismiss the several suits he had pending against the Department. In exchange, the Department agreed to return his property and assess the taxes at the statutory rate instead of by estimates.

The Department received Jones' records and found them to be inadequate and incomplete. The Department estimated assessments of sales, income and withholding taxes in the amount of $16,177.07. Jones protested the assessments and an administrative hearing was held at which time the withholding tax assessments were dismissed because Jones had no employees. The sales and income tax assessments in the amount of $11,490.56 were upheld and Jones appealed to chancery court.

Jones returned his sales tax permit, but continued to operate his business. The Department counterclaimed to enjoin Jones

from operating his business without a permit. After a lengthy trial, the chancellor affirmed the assessments and enjoined Jones from operating his business. Jones brings this appeal from that decision raising several points for reversal.

The first point Jones raises is the chancellor was wrong in finding the estimated taxes were reasonably assessed. Jones argues there was no cause for the Department to estimate his taxes since he had produced his records. We disagree. Ark. Stat. Ann. § 84-1907 (Repl. 1980) requires the taxpayer to keep suitable records for tax purposes. If a taxpayer fails to keep suitable records, the Commissioner of Revenues may make an estimated assessment based on the available information. Ark. Stat. Ann. § 84-4711(d) (Repl. 1980).

Jones' records were not suitable to determine the amount of taxes due. He admitted he did not keep records of sales for resale and barters and he paid sales tax only on money transactions, not barter transactions. One-half the pages in his ticket books were missing and he could only account for a few of the missing pages. As to the income tax assessment, Jones testified that he lived in poverty after his wife retired. When Mrs. Jones testified, she refused to divulge her social security number and her former employer.

In making its assessment, the Department determined Jones' records did not accurately reflect his business in several ways: 1) one-half the pages in the ticket books were missing; 2) no records were kept to document sales for resales as required by Ark. Stat. Ann. § 84-1907; 3) no records of barter transactions, which are taxable sales, were kept. Ark. Stat. Ann. § 84-1902(c) (Repl. 1980); 4) some duplicate tickets reflected different transactions from the original tickets; 5) Jones' ownership of valuable real estate; 6) questionable that Jones could live on $1600 annually; 7) a new building on Jones' property; 8) no evidence that Jones' wife had any income; 9) Jones ran a cash business; 10) information that Jones had made unreported sales to a Tennennbaum Co.; 11) a $35,000 bank account; and 12) an AP&L meter on Jones' property which was assigned to another business. Even though the Department conceded some of these enumerated reasons for estimating the taxes were without merit, when taken as a whole, it cannot be said that the chancellor's finding, that

Jones failed to keep adequate records causing the state to estimate his tax assessments is erroneous. We will not reverse the chancellor unless his findings are clearly erroneous. ARCP Rule 52(a).

Jones claims the Department's methods for computing the estimated tax assessments were unreasonable. The Department based the sales tax assessment on the monthly gross sales figure of $2400. The Department reached this figure by determining the taxable sales shown in the ticket books which was $800. Another $800 was added for sales for resales which were wrongfully claimed as exempt. Since one-half of the ticket book pages were missing, another $800 was added to cover any unreported sales.

The income tax assessment was based on U.S. Department of Labor statistics since Jones' records were insufficient. The records showed he earned only $1600 annually for a 25 year period and the Department was skeptical that Jones could live on that amount. Since one-half the sales and all the barter transactions were not recorded, the Department concludes Jones' income was more than the amount shown in his records. Also, Jones testified stripped cars could be sold for $15-20 each. While utilizing these facts, coupled with an estimate of Jones' cost of living expenses and Labor Department statistics, Jones' annual income was estimated at $14,820.

Jones has the burden to refute the reasonableness of the estimated assessments. Ark. Stat. Ann. § 84-4711(d). He has failed in this regard, except for the assessment on monthly gross sales of $2,400.00. We cannot find any support in the record for the $800.00 added to gross sales based on sales for resale. To the contrary, the state's only explanation is that "Well, again we just sort of estimated and used the Eight Hundred Dollar figure, which made the total then Twenty-Four Hundred Dollars per month." Since this assessment was clearly arbitrary, we reverse the chancellor's findings to $1,600.00. We find no other error as to the findings for the other estimated assessments.

Jones claims the tax audit should have been limited to three years instead of six years. Ark. Stat. Ann. § 84-4715(a) (Repl. 1980) provides a three year statute of limitations on audits. Act 401 of 1979 created an exception to this section permitting an audit to extend back six years if the taxpayer understates his taxes

by twenty-five percent or more. Ark. Stat. Ann. § 84-4715(e) (Repl. 1980). This act became effective January 1, 1980. Jones argues since part of his taxes became due prior to the adoption of Act 401, the three year statute of limitations should apply because Act 401 cannot be applied retroactively. *Ragland* v. *Travenol Laboratories, Inc.*, 286 Ark. 33, 689 S.W.2d 349 (1985). This argument was not raised at trial and we will not consider arguments raising a statute of limitations for the first time on appeal. *Hooper* v. *Ragar*, 289 Ark. 152, 711 S.W.2d 148 (1986).

Jones further argues the chancellor erred in quashing the subpoenas of five witnesses because this action violated his constitutional rights. We will not review this argument, because Jones failed to cite any authority to support the argument. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

Jones also contends the chancellor was wrong in finding the Department complied with the agreement with him, and for his argument, attempts to incorporate by reference a brief presented to the lower court which was not abstracted. Since this is improper, we do not reach this issue. Ark. Sup. Ct. R. 9; *Zini* v. *Perciful*, 289 Ark. 343, 711 S.W.2d 477 (1986).

Jones lastly argues he was denied his right to the assistance of counsel of his choice. Jones wanted a non-lawyer to sit at his table and assist him during the trial and the chancellor would not allow it. Only licensed attorneys can represent another person in court. *Undem* v. *State Board of Law Examiners*, 266 Ark. 683, 587 S.W.2d 563 (1979).

Inasmuch as we have reversed the chancellor's findings by reducing the assessments on monthly gross sales from $2,400.00 to $1,600.00, it is necessary that this case be remanded for a recalculation of the assessment on gross sales tax. We hereby remand with orders to the chancellor to enter a judgment consistent with this opinion. In all other particulars, we affirm.

HICKMAN and PURTLE, JJ., concur in part and dissent in part.

JOHN I. PURTLE, Justice, concurring in part and dissenting in part. I agree with the majority opinion to the extent that it finds no basis in the record for assessing sales tax on the "sales for

resale." I also agree with that part of the opinion holding that the appellant owes sales tax for three years based on the receipts which he furnished the department. However, I do not agree with extending the three year statute of limitations or in upholding the arbitrary income tax assessment.

This is a clear case of overreaching on the part of the tax collectors. The conduct of the appellant in this case should be considered in light of his perception that the efforts of the Department of Finance and Administration to conduct an audit of his taxes began as a direct result of Jones' participation in litigation against the Arkansas Attorney General, which successfully challenged the Attorney General's position in the Arkansas National Guard.

The record in this case reveals that Jones, pursuant to the agreement between himself and the Department, brought in his sales receipts for several years and he included a summary of each year's receipts on a sheet attached to the outside of these records. It is quite clear that the tax collectors only looked at one bundle for one year and out of it they based their assessment on only a small sample of these. They found his cover sheets to be accurate on the selected samples they examined. The original assessment was levied partially upon the fact that they found a $35,000 savings account in the name of Jones. Subsequently, it developed that it was not even the same Jones. Therefore, they graciously dropped this item as a basis for the estimated assessments.

During one of the hearings one of the tax collectors informed the appellant that all the department had to do was make one telephone call and the property would be subject to levy again. The Department of Finance and Administration employee stated: "That writ of execution can be issued again by a phone call which I can make from that office in there. I mean we are back where we were to start." What could be more threatening? Power is a heady thing and must of necessity be subject to review. Appellant, acting as his own counsel spoke about his records during the hearing in the Revenue Department, when he stated: "This is all my books and records for the year 1977. It's never been open. These papers have never been audited yet they say that they have been audited. They agreed to audit my papers." The response from the state's attorney: "We believe there was no need

to go through everyone of those for that same purpose, so we used a sample. . . . We agreed to do an audit and we did an audit based on the sample. We didn't agree to examine each and every invoice, as we regularly do not examine each and every invoice on any audit that we do except in very rare circumstances."

The state had seized his property and the appellant had been thrown in jail for contempt for refusing to furnish his records. The state subsequently agreed to drop the unrealistic tax assessments against him, if he would drop the lawsuits he had against them. The appellant agreed not to challenge the constitutionality of the Arkansas tax laws in return for the state agreeing to do a normal audit and collect whatever tax and penalty his records revealed he owed.

The original assessment against appellant included unemployment taxes due to the employment of three persons. Proof revealed the appellant did not have any employees at all. This is but one more example of the tax collector's cold-blooded handling of this case.

The assessment by the state of income taxes allegedly due from the appellant had even less foundation in the record than did the sales tax assessment for "sales for resale." In fact, the reasoning behind the assessment of income tax is completely void of information concerning the appellant's standard of living. The income tax assessment was based entirely on standardized tables promulgated by the Internal Revenue Service. Moreover, since the majority finds no support in the record for the $800.00 added to the Department's estimated gross monthly sales based on sales for resale (a figure equal to ⅓ of the total estimated sales), this reduction in total sales should be accordingly reflected in the appellant's estimated yearly income (almost $15,000) and income taxes. The majority opinion fails to identify the year, nature, or amount of the respective taxes owed by the appellant. I think the following question and answer is representative of the whole process here. The appellant, serving as his own counsel, asked the state's witness: "Then you made no effort in fact in seeing that these were accurate figures? They are purely speculation, is that correct, sir?" State's witness: "Yes." This, in my opinion, accurately describes the entire procedure by the state against this citizen. The taxpayers of the state of Arkansas have a

right to expect more consideration from their servants.

The tax collectors never at one time contacted the appellant during the audit here in question. Most of his records were never inspected, yet they were declared insufficient. The chief argument for assessing the income tax is that Jones simply could not have lived on the amount of income he reported. His reported income for the past several years was approximately $150 a month. Up until 1976 his wife was gainfully employed outside the home. Also, the taxpayer's father, who had independent income, lived with him. The fact is that three people were living out in the country on a known income of about $650 per month. The property was owned by the appellant and his wife and there were no mortgages to pay. Many three member families living in the setting described above would actually be able to save money. I know a great many elderly people here in the city of Little Rock who live on not much more than $200 per month. They do not eat well and perhaps don't sleep well either, but nevertheless they survive. There is nothing in this record that supports the finding that appellant could not live on the reported income. Obviously the appellant and his wife are frugal. They should not be penalized for being independent and willing to live inexpensively.

It is amazing to me that this Court, in *Ragland* v. *Travenol Laboratories, Inc.*, 286 Ark. 33, 689 S.W.2d 349 (1985), held that the statute in question here, Ark. Stat. Ann. § 84-4715(e) (Repl. 1980), did not operate retroactively and that the state was limited to three years in collecting such taxes, yet holds in the present case that the six year statute applies retroactively. The majority avoids this issue by stating that we will not consider arguments raised for the first time on appeal. However, the record reflects that the issue of the three year statute of limitations was unequivocally presented to the trial court in the appellant's direct testimony:

> What is the fact that I learned, that Act 401 of 1979 did not go into effect until January 1, 1980. It alters the fact of that statutorily, the Department of Finance *is limited to three years* on audits. . . . Yet, it is also a fact that the Department of Finance and Administration is holding certificates of indebtedness against Jones' estate in the amount of approximately One Hundred Forty-Three

Thousand Dollars in violation of A) the retrospective concept of law, by applying Act 401, 1979 to the years 1976, 1977, 1978 and 1979 in the instant case, thereby depriving Jones of the use of his property, denying him constitutional guaranteed rights and B) *the statutory three year limit is found at Ark. Stat. Ann. 844715A.* [Emphasis added.]

The appellant argued that Act 401 of 1979 should not be applied retroactively, and that the applicable statute of limitations was therefore three years. This is exactly the conclusion reached by this Court in *Travenol.* We have previously held that the legislature intended to allow three years in which the Commissioner could commence a challenge to the sufficiency of an income tax return. *Ragland* v. *Alpha Aviation Company, Inc.,* 285 Ark. 182, 686 S.W.2d 391 (1985).

Jones is apparently a fiercely independent man, and obviously a dissenter. Nevertheless, he is entitled to the same rights as other citizens. It seems to me that the Boston Tea Party was carried out by the likes of Theodore Jones. He may be a thorn in the side of tax collectors but he still deserves equal and fair treatment under the law. I do not think he has been treated fairly.

This case is a clear example of the strong hand of the government reaching into the lives and trampling upon the rights of individuals in order to reach a result desired by the government. It seems that all sight is lost of the fact that the Constitution was adopted by the people and for the protection of the rights of the people. This taxpayer struck a deal with the state and the state reneged. He had little choice but to sign the agreement—he had already spent some time in jail and all of his property had been seized. In doing so, the government had of course seized appellant's wife's property as well. Arbitrary, capricious, vindictive, and speculative are the best words to describe the actions of the state in this case. The income tax assessment is completely unfounded by the evidence in the record. I would reverse the assessments except with respect to the three years' sales taxes.

HICKMAN, J., joins in this opinion.