James PLEDGER, Director, Dept. of Finance and
Administration of the State of Arkansas *v.*
TROLL BOOK CLUBS, INC.

93-674 871 S.W.2d 389

Supreme Court of Arkansas
Opinion delivered March 7, 1994

*Cora L. Gentry*, for appellant.

*Wright, Lindsey & Jennings*, by: *John R. Tisdale* and *Troy A. Price*, for appellee.

ROBERT H. DUDLEY, Justice. This is another in the recent series of use tax cases. The chancellor ruled that Troll Book Club, Inc.'s sales of books in Arkansas were not subject to taxation under the Arkansas Compensating Tax Act of 1949. The Department of Finance and Administration appeals. We affirm.

Appellee Troll is a New Jersey Corporation with its principal place of business in Mahwah, New Jersey. It is neither incorporated nor registered to do business in Arkansas. It has neither a place of business, nor property, nor employees in this State. It markets and sells children's books throughout the United States by mailing catalogs to teachers who have either previously purchased books or who have requested the catalogs. Each catalog contains about thirty-two individual order forms listing the current book selections for a particular grade.

The catalogs instruct the teacher on how to collect student orders, how to consolidate those student orders, and how to collect the money for the orders. After collecting the student orders, the teacher fills out one master order form in his or her name and sends it to Troll. Payment is handled in one of three ways: Either (1) parents send checks payable to Troll and the teacher forwards the checks with the orders; or, (2) teachers receive cash from the students, and then, in turn, issue their personal check for the same amount to Troll; or, (3) teachers channel the order through the school's bookkeeping department and have the school issue the check to Troll.

When the books arrive, the teacher retrieves the student

order forms and distributes the books accordingly. Teachers can receive cash or merchandise "bonuses," depending on the size of the order. Troll estimates its total annual sales in Arkansas at 2.7 to 3 million dollars.

The Director of the Department of Finance and Administration initially assessed Troll a vendor's use tax in the arbitrary amount of $706,849.87 for the audit period from February 1, 1983, through January 31, 1989. After an administrative hearing, Troll agreed to allow the Department to examine its books, and the arbitrary assessment was recalculated to an assessment of $260,261.70 for the period for the period from 1983 through 1989. A second assessment in the amount of $104,801.85 was made for the period beginning February 1, 1989, and ending June 30, 1991. An administrative decision was issued upholding the Department's assessments. Troll subsequently posted a bond for the taxes and brought this suit under the Arkansas Tax Procedure Act. The chancellor ruled that Troll's sales of books to students in this State were not subject to the use tax.

## The Standard of Review

The Arkansas Tax Procedure Act, Ark. Code Ann. § 26-18-101—904 (Repl. 1992 & Supp. 1993), provides for *de novo* review of administrative tax decisions by chancery courts. Ark. Code Ann. § 26-18-406(b)(1) (Repl. 1992). Troll was not claiming an exemption from a tax, but rather was claiming that a tax could not be levied upon it. Consequently, the Department had the burden of proving the propriety of the tax, *Leathers* v. *A & B Dirt Movers, Inc.* 311 Ark. 320, 325, 844 S.W.2d 314, 316 (1992), and all doubts and ambiguities had to be resolved in favor of the taxpayer. *Dunhill Pharmacies, Inc.* v. *State*, 295 Ark. 483, 749 S.W.2d 660 (1988). Although we review these cases *de novo*, we will not disturb the chancellor's finding of fact unless they are clearly erroneous. *Jones* v. *Ragland*, 293 Ark. 320, 323, 737 S.W.2d 641, 643 (1987).

## The Applicable Law

Sections 26-53-101 to 129 of the Arkansas Code Annotated of 1987 impose a use tax on vendors selling personal property for use, storage, or consumption in this State. Section 26-53-102(4) provides that a "vendor" is: "Every person engaged in

making sales of tangible personal property by mail order, by advertising, by agent; or by . . . taking orders for sales [of tangible personal property] for use, consumption, or storage in this state;. . . ."

The foregoing statutes provide for the imposition of the tax upon a vendor located out of state if the vendor makes sales of personal property for use, storage, or consumption within this State. However, the Constitution of the United States, through the dormant Commerce Clause, art. I, § 8, cl. 3, limits a state's ability to tax out-of-state entities when such taxation would burden interstate commerce. The Supreme Court has recently considered this issue in relation to mail order sales and determined that, for such a tax to be upheld under the dormant Commerce Clause, the entity to be taxed must maintain a physical presence in the taxing state. *Quill Corp.* v. *North Dakota*, 112 S. Ct. 1904 (1992). The Department sought to prove Troll's "physical presence" by proving that the teachers, who were physically present in this state, were the agents of Troll. Indeed, if Troll's agents were present in this State, Troll would be present in this State.

### Procedure in This Case

In the trial court, the parties agreed that unless the Department could prove a formal agency relationship between the teachers and Troll, the necessary conclusion by the trial court would be that Troll lacked the "substantial nexus" required by the federal Constitution in order to be taxed by Arkansas. The Department's trial brief provides: "The only issue for this court to determine is whether the teachers were agents of Troll Book Club, Inc." Troll agreed and, in its brief to this court, states:

> Since appellee [Troll] had no offices, employees, or facilities in Arkansas, the parties agreed and the Chancery Court required appellant [Department] to prove that the teachers who purchased books were appellee's agents under Arkansas law in order to establish such "substantial nexus." The [trial] court also concluded, and the parties agreed, that in the absence of such a showing of agency, no substantial nexus between the New Jersey company and Arkansas would exist.

The chancellor ruled on the only issue submitted to her,

which was whether an agency relationship had been created. One paragraph of the final order provides:

> The Defendant [Department] alleged that teachers are the agents of the Plaintiff [Troll] in the State of Arkansas, thus attempting to bring Plaintiff within the definition of vendor under the Arkansas Compensating Tax Act and provide the substantial nexus between Plaintiff and the State of Arkansas which is required to impose the tax under the Commerce Clause under the United States Constitution. The Defendant has the burden of proof with respect to establishing that teachers are agents of the Plaintiff in the State of Arkansas. The Defendant and the Plaintiff further acknowledge that the Court finds that the Plaintiff does not have a "substantial nexus" with the State of Arkansas unless an agency relationship exists between the teachers and Plaintiff.

The chancellor initially opined that, in order to find an agency relationship, Arkansas law requires both a showing that an agent is authorized to perform for and to bind a principal, and that the principal has a right to control the agent. Next, the chancellor found that the evidence failed to show that Troll authorized the teachers to bind it. In addition, she found that the catalogs which directed the method of sales were for display and convenience, and did not constitute an implied contract to control the teachers' actions. Finally, the chancellor found that the bonus points were not compensation. In sum, the chancellor found that the Department had failed to prove an agency relationship. In the absence of proof of an agency agreement, the chancellor ruled that Troll could not be subjected to the use tax under Ark. Code Ann. §§ 26-53-101–129 (1987 & Supp. 1993) (R. 133-34).

In oral argument before this court, there was considerable discussion about whether a "substantial nexus" might be found with proof of something less than agency. However, that is an issue we do not reach because it was not raised below, and we have often written that we will not address an issue on appeal which was not raised below. *Hubbard* v. *The Shores Group, Inc.*, 313 Ark. 498, 855 S.W.2d 924 (1993). Accordingly, the holding in this case is limited to the one issue argued, whether an agency relationship existed.

The burden of proving an agency relationship lies with the party asserting its existence. *B.J. McAdams, Inc.* v. *Best Refrigerated Express, Inc.*, 265 Ark. 519, 579 S.W.2d 608 (1979). This court has used different definitions of agency that were appropriate for the particular cases, but each of them includes the element of control by the principal. In *Evans* v. *White*, 284 Ark. 376, 682 S.W.2d 733 (1985) and *Campbell* v. *Bastain*, 236 Ark. 205, 365 S.W.2d 816 (1968), we adopted the definition of agency contained in the Restatement (Second) of Agency. We said the two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control. In *Hinson* v. *Culberson-Stowers Chevrolet, Inc.*, 244 Ark. 853, 427 S.W.2d 539 (1968), we examined the Restatement definition together with a quote from 2 Am. Jur. 13, Agency § 2 and concluded that the essential elements for a showing of the agency relationship were authorization and control. *Id.* at 855, 427 S.W.2d at 541-42.

The Department contends that the chancellor's finding was clearly erroneous because Troll exercised control over the teachers through the language contained in its brochures. The brochures describe the books, set dates to tally and return the order forms and money, and instruct the teachers on distributing the enclosed newsletter and filling out the master order. Such instructions fall far short of establishing authorization and control. In fact, the testimony showed that about eighty percent of the teachers who received the brochures did nothing with them except to throw them away.

The Department, in its argument that the chancellor should have found an agency relationship, relies heavily on a California decision, *Scholastic Book Clubs, Inc.* v. *State Board of Equalization*, 255 Cal. Rptr. 77 (Cal. App. 1 1989). In that case, involving almost an identical arrangement for selling books, the appellate court held that (1) the teachers operated under the authority of Scholastic in taking the orders, (2) an implied contract existed between Scholastic and the teachers, and (3) Scholastic's use of teachers to solicit book orders was a sufficient nexus for the California use tax. *Id.* at 81. The case is on point, but it is clearly distinguished for two reasons. First, it was decided before the Supreme Court decided *Quill Corp.* v. *North Dakota*, 112 S. Ct.

1904 (1992), which mandated the bright-line physical presence test for interstate mail order sales. The California appellate court viewed physical presence as only *one* of the factors to be considered in determining whether a nexus should be found rather than viewing it as the *dispositive* factor. Second, California agency law, unlike Arkansas agency law, allows the relationship of agency to be implied retroactively by ratification. In Arkansas, the agency relationship must be shown to exist by proof of both authorization and control or else the doctrine of ratification is inapplicable. *See E.P. Dobson, Inc.* v. *Richard,* 17 Ark. App. 155, 158, 705 S.W.2d 893, 893 (1986) (citing *Runyan* v. *Community Fund of Little Rock,* 182 Ark. 441, 31 S.W.2d 742 (1930)).

Finally, the Department contends that its position is supported by our case of *Ragland* v. *Quality School Plan, Inc.,* 279 Ark. 256, 651 S.W.2d 447 (1983). Again the argument is without merit for the reason that the case is clearly distinguished. In that case the taxpayer, Quality, represented one hundred publishers of magazines. Quality's agents, who were present in this State, went to various school districts within the State and recruited students to sell magazines for the publishers. The students sold the magazines throughout the State. The Department assessed a use tax against Quality. Quality sought a refund of the use tax and argued that the students, rather than Quality, were the vendors. *See Quality School Plan,* 279 Ark. at 257-58, 651 S.W.2d at 448. We held that, under the language of the statute, Quality was a vendor. Id. at 257, 651 S.W.2d at 448-49. The case has no application to the sole issue now before us, whether an agency relationship was proven between Troll and the teachers.

The chancellor's finding that an agency relationship was not proven is not clearly erroneous.

Affirmed.

HAYS, J., dissents.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. The Department hints at what to me might be a winning argument in this matter but failed to articulate it sufficiently to the chancery court. That argument is that our vendor statute does not mandate an agency

relationship as defined by Arkansas case law but rather an agency relationship as defined by statute. The statute reads:

> (4) "Vendor" means and includes every person engaged in making sales of tangible personal property by mail order, by advertising, by agent; or by peddling tangible personal property, soliciting, or taking orders for sales of same for storage, use, or consumption in this state; and includes all salesmen, solicitors, hawkers, representatives, consignees, peddlers, or canvassers as agents of the dealers, distributors, consignors, supervisors, principals, or employers under whom they operate or from whom they obtain the tangible personal property sold by them. Irrespective of whether persons are making sales on their own behalf or on behalf of dealers, distributors, consignors, supervisors, principals, or employers, they must be regarded as vendors; and the dealers, distributors, consignors, supervisors, principals, or employers must be regarded as vendors for purposes of this subchapter.

Ark. Code Ann. § 26-53-102 (4) (1987). In my opinion, teachers soliciting on behalf of Troll Book Clubs, Inc. might well qualify as representatives, canvassers, and so forth under the statute. There is no requirement under the statute that control of the teachers is a necessary factor, although control is clearly an essential element of common law agency.

Again, the Department failed to bring this argument sufficiently to the attention of the chancery court and for that reason, our review of this facet of the case is foreclosed. I concur in the affirmance.

STEELE HAYS, Justice, dissenting. This case presents a legal question of singular importance: Whether certain merchandising methods of Troll Book Club, Inc. (Troll) above and beyond mere mail order solicitation provide a "substantial nexus" consistent with the Commerce Clause for purposes of state taxing authority. The case is important to Troll, a nationwide distributor of books and materials, and to the State of Arkansas. It is the first case to reach this court since *Quill Corporation* v. *North Dakota*, ____U.S.____, 112 S.Ct. 1904 (1992), was decided in May, 1992.

The problem with the case from our standpoint is that there

are segments of the record which are susceptible of differing interpretations. The majority finds that the parties agreed in the trial court that unless the Department could prove "a formal agency relationship between the Teachers and Troll, the necessary conclusion by the trial court would be that Troll lacked the substantial nexus required by the federal Constitution in order to be taxed by Arkansas." I am not persuaded that such was the understanding, as I interpret the Department's position before the trial court and renewed in this *de novo* appeal, to be whether the Teachers were agents of Troll *within the meaning* of Ark. Code Ann. §§ 26-53-101 and 102(4) (1987). Section 26-53-101 imposes a use tax on vendors of personal property for use, storage or consumption in Arkansas. Section 26-53-102(4) defines a vendor as:

> "Every person making sales of tangible personal property by mail order, by advertising, by *agent*; or by *peddling . . . .soliciting*, or *taking orders* . . . including all *salesmen, solicitors, members, representatives, consignees, peddlers*, or canvassers as agents of the dealers, distributors, consignors, supervisors, principals, or employers under whom they operate or from which they obtain the tangible personal property sold by them." [My emphasis.]

By focusing entirely on the word "agent" and disregarding the statute as a whole, the trial court misconstrued the issue to be decided. "A statute must be analyzed in its entirety and meaning given to all portions." *Callahan* v. *Little Rock Distributing Co.*, 220 Ark. 443, 248 S.W.2d 297 (1952). "Where it was unnecessary to resort to the rule of *ejusdem generis* to ascertain legislative intent, the court was without power to disregard any of the terms of an act, but was required to give effect to all words, provisions, and terms employed." *Wiseman* v. *Affolter*, 192 Ark. 509, 92 S.W.2d 388 (1936). And *see Ledbetter* v. *Hall*, 191 Ark. 791, 87 S.W.2d 996 (1936) ("Courts must give effect to every part of the act"); *Kifer* v. *Liberty Mutual Ins. Co.*, 277 F.2d 1325 (C.A. Ark. 1985) ("Particular provision of a statute must be construed with reference to the statute as a whole, not in isolation.") But even if one accepts the issue as being whether a "formal agency relationship" exists between the teachers and Troll, I believe the majority errs in its application of the law.

The majority notes that Troll sends teachers materials describing books offered for sale, which the teacher distributes to the students, sets a time limit for orders, gives direction for filling out the orders, accepts the orders and money, converts the individual orders to a master order, forwards the master order to Troll, receives and distributes the merchandise when the order is filled and earns a commission based on the amount of merchandise sold. The majority concludes that no agency exists because the foregoing activities by the teachers fall short of authorization and control. Up until the point at which the materials have merely been received by the teachers, the majority is correct.

However, once the teacher undertakes to participate by sending in the orders, the picture changes. At that point a contract between the teacher and Troll has been established. Troll has made an offer to the teacher which the teacher accepts by participating in the program. Once the teacher engages in the invited arrangement, an acceptance occurs and a contract of agency exists. *Restatement of Contracts Second*, §§ 1, 17, 50, 71 (1979); 1 Lord, *Williston on Contracts*, § 4:5 (1992); *Restatement of Agency*, 2d § 15 (1958), Comment a and b. *Id.* at 83.

> a. *Manifestation by principal.* One becomes an agent only if another in some way indicates to him consent that he may act on the other's account. This consent can be communicated by any of the means stated in Section 26, including acquiescence by the principal in a series of acts previously done by another as agent. A person is not an agent merely from the fact that he believes he had been authorized to act as agent for another or purports to act as such. It is only where the person acting believes reasonably, from conduct for which the other is responsible, that he is authorized so to act that there is an agency relation. The same consequences as if there were an agency may result, however, from the ratification by the person on whose account the act is purported to be done. *See* §§ 100-101.

> b. *Consent by agent.* The agency relation exists only if the agent consents to it. A person may, by his sole act, create a power in another to act on his account, but since agency is a fiduciary relation, it can exist only if the other

accepts the power. As in the case of contractual relations, the manifestation of the principal may be such that it is not necessary for the acceptance to be communicated to him. Thus, if the principal requests another to act for him with respect to a matter, and indicates that the other is to act without further communication and the other consents so to act, the relation of principal and agent exists. If, under such circumstances, the other does the requested act, it is inferred that he acts as agent unless he manifests that he does not so intend or unless the circumstances so indicate. This inference is strengthened if, being requested to act in the matter, the other does something which he could properly do only as an authorized agent.

*Id.* at 83.

These comments from the Restatement are applicable to the facts in this case and demonstrate that an agency relationship was established between Troll and the teachers.

Similarly, in *Ragland* v. *Quality School Plan, Inc.*, 279 Ark. 256, 651 S.W.2d 447 (1983), this court considered marketing methods of Quality School to sell magazine subscriptions in Arkansas by students at various schools. The schools collected the subscription orders, retained a percentage, and submitted the balance of the subscription price to Quality. Quality maintained it was not the vendor within the meaning of our statute. We cited an Alabama case as "persuasive" — *Quality School Plan, Inc.* v. *Alabama*, 53 Ala. App. 418, *cert. den.* 293 Ala. 771 (1974):

There it was found that the students selling subscriptions *were salesmen or agents*. In the present case it was agreed to by the parties and subsequently held by the court, that magazine subscriptions were items of tangible personal property. Someone was the vendor and we think that of all the candidates the appellee best fits the statutory description of a vendor.

\*\*\*\*\*\*\*\*

Considering the facts of the instant case we think our conclusion must be that the appellee, *through its agents*, made sales of tangible personal property within the State

of Arkansas. [My emphasis.]

The majority opinion states that *Scholastic Book Clubs Inc.* v. *State Board of Equalization*, 207 Cal. App. 734, 255 Cal Rptr. 77 (Cal. App. Dist. 1989), involving an arrangement for selling books, is "almost identical" to this case. However, it finds that California law of agency allows the relationship of agency to be implied retroactively by ratification, whereas in Arkansas agency must be shown to exist by proof of authorization and control. The majority has misread the case. The Scholastic court found the agency relationship to be established *in the first instance,* finding the offer to have occurred when the bookseller sent its materials to the teachers, the acceptance occurring when the teachers participated in the program. Ratification was only seen as an alternative basis for the agency:

> Appellant stresses the fact that the teachers have no initial obligation to act, and argues therefrom that they are not acting under its authority. We conclude otherwise. The teachers are certainly not acting under anyone else's authority, and once they undertake to act, they are obviously acting under appellant's authority, and certainly as appellant's agents or representatives. "An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) The creation of an agency relationship is not dependent upon the existence of a written agreement. The relationship may be implied based on conduct and circumstances.

Thus, the decision in the *Scholastic* case fully supports the Department's position here. I suggest that a contract for agency was formed and that the teachers were acting as representatives for Troll. Consequently, there is no question but that Troll is subject to the tax.

As to the matter of substantial nexus, in my estimation Troll's merchandising operation in Arkansas falls plainly within the broad language of § 26-53-101, limited only by the Commerce Clause as measured by the factors established in *National Bellas Hess, Inc.* v. *Department of Revenue of Illinois*, 386 U.S. 753, 87 S.Ct. 1389 (1967), *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 97 S.Ct. 1076 (1977) and *Quill Corporation* v.

*North Dakota*, ____ U.S. ____, 112 S.Ct. 1904 (1992).

Nor is a substantial nexus dependent upon a finding of an agency relationship. Indeed, even independent contractors have been held to constitute a substantial nexus for purposes of state taxing authority. *See Scripto Inc.* v. *Carson*, 362 U.S. 207, 80 S.Ct. 619 (1960) and *Ragland* v. *Quality School Plan, Inc., supra.* The most recent case on this subject is *Quill Corporation* v. *North Dakota*, ____U.S. ____, 112 S.Ct. 1904 (1992), where the Supreme Court reviewed *National Bellas Hess, Inc.* v. *Department of Revenue of Illinois*, 386 U.S. 753, 87 S.Ct. 1389 (1967), and *Complete Auto Transit, Inc.* v. *Brady* 430 U.S. 274, 97 S.Ct. 1076 (1977), among others, in determining whether North Dakota's use tax impinged on either the Commerce Clause, or the Due Process Clause, and distinguishing the substantial nexus requirements of the two provisions. The court reaffirmed the rule of *Bellas Hess*, drawing a "sharp distinction" between mail order sellers with "a physical presence" in the taxing state and those which do no more than communicate with customers in the state by mail or common carrier as part of a general interstate business. In this case, it is beyond serious contention that Troll engages in considerably more than mail order mailings and follow-up deliveries as in *Quill*. Troll capitalizes on the time, position and presence of Arkansas teachers to distribute, promote, gather, consolidate, collect, forward the orders, and to receive and distribute the merchandise, for all of which the teachers earn a commission.

In sum, Troll Book Club has chosen to avail itself of a market for its products consisting of Arkansas school children and their parents and reaches that market through the instrumentality of classroom teachers, a market producing annual sales of $2,700,000 to $3,000,000. It mails 170,000 brochures a year at monthly intervals to coincide with the school year to the teachers at the schools. The brochure contains thirty to forty color tear-outs which the participating teacher distributes to the students. The tear-outs include the order forms and there are forms for use of the students during the summer break. The teachers collect the money, in cash or checks payable generally to *Troll*, and the merchandise comes to the teacher, who then distributes it to the buyer. In addition to the numerous other activities mentioned, Troll maintains a toll free telephone available for use. That the

children, and not the teachers, are Troll's targeted consumer is plain. In light of those activities, far in excess of anything existing in *Quill*, I can see no sound reason why the sale of Troll's merchandise by these methods should not be subject to a reasonable, nondiscriminatory tax in Arkansas. For those reasons I respectfully dissent.