Timothy J. LEATHERS, Commissioner of Revenues, State of Arkansas *v.* A & B DIRT MOVERS, INC.

92-505                                   844 S.W.2d 314

Supreme Court of Arkansas
Opinion delivered December 21, 1992
[Rehearing denied February 15, 1993.*]

*Glaze, J., would grant rehearing.

*Rick L. Pruett*, for appellant.

*Larry E. Graddy*, for appellee.

*Jack East, III*, for amicus curiae Associated General Contractors.

JACK HOLT, JR., Chief Justice. This case involves the question of whether the appellee, A & B Dirt Movers, Inc. ("A & B"), should incur the Arkansas Gross Receipts Sales Tax on certain of their transactions involving the hauling of dirt. We find that it should and reverse.

A & B Dirt Movers, Inc. is engaged in the business of excavation and dirt hauling. The appellant, Arkansas Department of Finance and Administration, conducted a sales tax audit of A & B covering six years and determined that certain transactions involving the transfer of title and possession of

tangible personal property such as dirt, fill material and similar items, were occurring without payment of the Arkansas Gross Receipts Tax. Mrs. Henry, an auditor with Arkansas Department of Finance and Administration, went to A & B and reviewed the actual sales invoices which were prepared according to the month of the sale. Information on the invoices included the customers' names and addresses, type of transaction, date of transaction, number of loads hauled and the cost. According to Mrs. Henry, the invoices did not indicate the owners of the dirt from the beginning of the transaction to the end. As a result of this audit, A & B Dirt Movers, Inc. was assessed tax and interest in the amount of $8,919.45. No penalty was assessed because since this was A & B's first audit, the Department of Finance and Administration assumed they were not aware of the tax. A & B disagreed with the audit contending that it was in the business of providing a nontaxable service — hauling. The company claimed that although they charged for the excavation and hauling of dirt, the dirt was actually free. After exhausting its administrative remedies, A & B filed an action in the Faulkner County Chancery Court contesting the audit determination. After a nonjury trial, the chancellor found that the transactions were not taxable, and the Commissioner of Revenues brings this appeal.

In order to be subject to the Gross Receipts Tax, the dirt hauled must be considered tangible personal property that has been sold:

26-52-301 Tax Levied

There is levied an excise tax of three percent (3 %) upon the gross proceeds or gross receipts derived from all sales to any person of the following:

(1) Tangible personal property.

Ark. Code Ann. § 26-52-301(1) (1992).

The Arkansas Gross Receipts Tax Regulations, promulgated by the Department of Finance and Administration in 1987, define the term "tangible personal property" as:

GR-3(I) The term "Tangible Personal Property" means personal property which may be seen, weighed, measured, felt, touched or is in any other manner perceptible to the

senses.

The Gross Receipts Act provides the definition of a sales:

(3)(A) "Sale" is declared to mean the *transfer of either title or possession. . .for a valuable consideration* of tangible personal property, regardless of the manner, method, instrumentality, or device by which the transfer is accomplished.

(3)(D) "Sale" shall not include the furnishing or rendering of services, except as otherwise provided in this section.

Ark. Code Ann. § 26-52-301(1) (1992) (emphasis added).

In holding that the audited transactions are not subject to the gross receipts tax, the chancellor made the following findings of fact:

A. The primary business purpose of A & B is excavation and dirt hauling;

B. The primary source of revenue of A & B is generated from the services it renders;

C. The *Ferguson Monument* case directs the Court's attention to the question of whether or not A & B does anything to the dirt at any time to change its character or enhance its value. A & B does nothing to the dirt to change its character or enhance its value. As delivery doesn't enhance the value of the dirt within the meaning of *Ferguson*, it is not subject to tax;

D. The Court referred to the title or name used by A & B as a factor in its decision, that name being A & B Dirt Movers, Inc.;

E. The price charged by A & B for its service remained the same price to the customer even if A & B paid for and passed through the cost of the dirt;

F. The *Ferguson* case is distinguished from this case because (1) Ferguson's primary purpose was that of selling a product and (2) Ferguson actually changed the form of the product prior to selling it to the customer, e.g. like changing water to ice, and A & B does not change the dirt

in any manner;

G. In viewing the transfer of dirt from A & B's property, the Court determined that (1) A & B's primary motivation in purchasing the land was not to sell the dirt; (2) A & B's purchase of its land was not similar to a merchants purchasing inventory for future sale; (3) A & B's removal of dirt from its own land would improve the land and would not depreciate the land; and (4) A & B does not charge for the dirt, only the service of hauling;

H. The Court examined the various types of transactions and concludes that A & B is generally a delivery person for the customer or an agent of the customer;

I. The court cannot distinguish between the hauling of dirt from A & B's own property versus the hauling of dirt from other property because A & B's stockholders could easily create a separate corporation that would eliminate any distinction to be made;

J. The defendant's witness testified that sales tax would or would not apply depending on whether or not A & B could prove with documented invoices the manner in which the particular transaction evolved. The Court finds no substantive distinction between (1) A & B paying for the dirt and passing the cost to the customer versus (2) the customer paying the owner of the dirt directly and therefore, finds that a transaction should not be considered to be taxable dependent upon whether or not it is supported by written invoices.

■ Ark. Code Ann. § 26-18-406(b)(1) (1992), provides that chancery courts are to review administrative tax decisions de novo. The statute gives the court jurisdiction to hear appeals of these tax cases once they have been adjudicated in chancery: "An appeal will lie from the chancery court to the Supreme Court of Arkansas, as in other cases provided by law." Ark. Code Ann. § 26-18-406(b)(2) (1992). As such, we review this case as we review all chancery court decisions, de novo. *See Medalist Forming Sys., Inc.* v. *Malvern Nat'l Bank*, 309 Ark. 561, 832 S.W.2d 228 (1992) ("While our review of chancery cases is de novo. . .we do not reverse findings of fact unless the chancellor's

findings are clearly erroneous.").

■ As this case involves a question of whether a gross receipts tax should be assessed against the taxpayer, we are deciding an issue involving the levy of a tax. Any doubts or ambiguities, in this regard, must be resolved in favor of the taxpayer. *Dunhall Pharmaceuticals, Inc.* v. *State*, 295 Ark. 483, 749 S.W.2d 666 (1988); *City of Hot Springs* v. *Vapors Theatre Rest., Inc.*, 298 Ark. 444, 769 S.W.2d 1 (1989). The agency claiming the right to collect a tax bears the burden of proving that the tax law applied to the item sought to be taxed. *Meadowbrook Country Club, supra.*

However, if the taxpayers records are not clear, this burden shifts to the taxpayer to show why he should not be taxed. Arkansas Code Annotated § 26-18-506 (1992) provides:

> (a) It is the duty of every taxpayer required to make a return of any tax due under the state tax law to keep and preserve available records as are necessary to determine the amount of tax due or to prove the accuracy of any return. . . .

> (d) When a taxpayer fails to preserve and maintain the records required by any state tax law, the director may, in his discretion, make an estimated assessment based upon information available to him as to this amount of tax due by the taxpayer. *The burden of proof of refuting this estimated assessment is upon the taxpayer.*

(Emphasis added.)

In making his determination that the transactions at issue were not taxable, the Chancellor premised his findings on the fact that "a transaction should not be considered to be taxable dependent upon whether or not it is supported by written invoices." This underpinning is wrong as a taxpayer has a legislatively imposed responsibility to keep good tax records, and A & B failed to do so. Thus, the burden was on A & B to refute the tax.

In his findings of fact, the Chancellor refers to *Ferguson Monument* v. *Cook*, 215 Ark. 373, 220 S.W.2d 808 (1949). However, as *Ferguson* involves the issue of whether labor costs

should be included in the price of the product for taxation purposes, we do not find this case relevant and will not discuss it.

■ As the auditor testified, whether ownership was transferred in certain circumstances could not be determined by looking at A & B's records. The invoices reviewed in the audit contained the customer's name, address, type of transaction, loads hauled and a date. According to the auditor's testimony, she could not determine from the information on the invoices the owner of the property at the beginning and the owner at the end of the transaction.

The auditor further testified that she deleted items that she deemed taxable if A & B's owner, Mr. Nabholz, provided proof that they should be deleted. For example, if Mr. Nabholz had a contract or other documentation proving ownership of the dirt had not transferred from A & B to the customer, the auditor deleted the item. Without documentation to the contrary, the auditor assessed a tax on the transactions as sales of dirt.

To illustrate its position, A & B prepared exhibits one through six, summarizing the transactions at issue from A & B's viewpoint:

*Plaintiff's Exhibit One. Material Owned By Customer and Hauled to Another Location.*

| CUSTOMER | DESCRIPTION | AMOUNT |
|---|---|---|
| Baptist Camp | Loads | $1275.00 |
| Bernard Nabholz | 24 Lds Fill Dirt | $ 660.00 |
| Con Ark Const Co | 23 Ld Fill | $ 690.00 |
| Con Ark Const Co | 1 Ld Fill Dirt | $ 30.00 |
| Con Ark Const Co | 11 Ld Fill | $ 319.00 |
| Con Ark Const Co | 2 Ld Fill | $ 58.00 |
| Con Ark Const Co | 2 Ld Fill | $ 203.00 |
| Con Ark Const Co | 22 Ld Fill | $ 638.00 |
| Con Ark Const Co | 240 Yd Fill Dirt | $ 750.00 |
| Con Ark Const Co | 3 Lds Fill | $ 87.00 |
| Con Ark Const Co | 7 Ld Fill Dirt | $ 175.00 |
| Con Ark Const Co | 8 Ld Fill | $ 200.00 |
| Con Ark Const Co | Fill | $1276.00 |
| Starkey Const Co | 7 Ld Fill Dirt | $ 157.00 |
| David Starkey | 12 Lds Fill | $ 360.00 |
| Bernard Naboltz | 18 Lds Fill | $ 450.00 |
| Conark | 2 Lds Topsoil | $ 60.00 |
| May Lewis | 10 Lds Topsoil | $ 300.00 |
| Ollie Hamlett | 10 Lds Haul Off | $ 150.00 |
| Ollie Hamlett | 13 Lds Haul Off | $ 195.00 |
| Ollie Hamlett | 6 Lds Haul Off | $ 90.00 |
| | TOTAL | $8123.00 |

*Plaintiff's Exhibit Two. All Dozer Time — Only $120.00 Charged for Material.*

| CUSTOMER | DESCRIPTION | AMOUNT |
|---|---|---|
| Rich Fore | 4 Lds Fill | $2155.00 |
| | TOTAL | $2155.00 |

*Plaintiff's Exhibit Three. Material Paid For — 2.00 Per Yard*

| CUSTOMER | DESCRIPTION | AMOUNT |
|---|---|---|
| Dick Enderlin | 1 Ld Topsoil | $ 45.00 |
| Ralph Strack | 4 Lds Topsoil | $ 200.00 |
| Frank Roland | 2 Lds Haul | $ 80.00 |
| Frank Roland | 60 Lds Topsoil | $ 360.00 |
| Trotter Const | 14 Loads Topsoil | $ 690.00 |
| | TOTAL | $1375.00 |

*Plaintiff's Exhibit Four.  Material Hauled From Property of A & B Movers, Inc. to Customer.*

| CUSTOMER | DESCRIPTION | AMOUNT |
|---|---|---|
| Dan Davis | 4 Lds Shale | $ 120.00 |
| S & S Const | 10 Lds Shale | $ 350.00 |
| Ken | 6 Lds Fill | $ 150.00 |
| Kent Griffin | 12 Lds Shale | $ 360.00 |
| Kent Griffin | 3 20 Yd Lds | $ 90.00 |
| Kent Griffin | 6 20 Yd Lds | $ 360.00 |
| K & D Const | 9 Lds Shale | $ 400.00 |
| K & D Const | 9 Lds Shale | $ 320.00 |
| Charles Hightower | 16 Lds File | $1220.00 |
| | TOTAL | $3370.00 |

*Plaintiff's Exhibit Five. Material Obtained by A B Dirt Movers, Inc. Free of Charge and Delivered to Customer*

| CUSTOMER | DESCRIPTION | AMOUNT |
|---|---|---|
| Con Ark Const Co | Loads | $1650.00 |
| Paul Bruich | Fill Dirt | $ 25.00 |
| Gold Creek | 7 Lds Fill | $ 245.00 |
| Paul Watts | 77 Lds Fill Dirt | $ 770.00 |
| Ronnie Fowlkes | Fill Dirt | $ 165.00 |
| Paul Watts | 7 Ld Fill Dirt | $ 350.00 |
| Edwards Const | 20 Lds Fill | $ 400.00 |
| | TOTAL | $40,072.60 |

*Plaintiff's Exhibit Six. Material Obtained by Customer
From a Third Party — Customer's Material.*

| CUSTOMER | DESCRIPTION | AMOUNT |
|---|---|---|
| Hitower | 11 Lds Fill | $ 440.00 |
| Hitower | 2 Lds Fill | $ 80.00 |
| Hitower | 2 Lds Fill | $ 80.00 |
| Hitower | 2 Lds Fill | $ 80.00 |
| Hitower | 4 Lds Fill | $ 160.00 |
| Paladino & Nash | 2 Lds Topsoil | $ 70.00 |
| | TOTAL | $73,376.00 |

The Commissioner conceded during the course of the appeal that the transactions reflected in exhibits one and six were not taxable under the gross receipts tax. That leaves for our consideration the transactions alluded to in exhibits two through five. At the chancery court trial, Mr. Nabholz reviewed the exhibits and discussed the source of the dirt in each. In arguing that the transactions represented in these four exhibits are subject to the Gross Receipts Tax, the Commissioner claims that pursuant to Ark. Code Ann. § 16-18-506 (1992), he may assess a tax on these transactions because A & B's records are not clear. We agree.

As the statutory definitions indicate, a sale of tangible personal property results when title of the property is exchanged for valuable consideration. There is no means to determine from the records of the transactions at issue how much of the price charged is for hauling and how much, if any, is actual consideration for the dirt. Nor do the records reflect from whom ownership of the dirt was transferred.

While it is clear that the transactions involved a service, it appears that these transactions also involved the sale of dirt. Absent adequate additional documentation or testimony from the parties involved, the gross receipts tax should have been levied against the taxpayer on these transactions. The taxpayer has the burden of refuting the reasonableness of the estimated tax assessments. *Jones* v. *Ragland* 293 Ark. 320, 737 S.W.2d 641 (1987). At the trial, A & B supported its documentation with testimony from Martin Presley, a customer of A & B, as well as from A & B's owner, Mr. Nabholz. Mr. Presley testified that he often used A & B to haul materials that he had previously

acquired. Transactions between A & B and Mr. Presley were included on exhibit six. Since exhibit six is one of the two exhibits the Commissioner of Revenues conceded during this appeal was not subject to tax, Mr. Presley's testimony is not relevant to the transactions at issue in this appeal.

During the trial, Mr. Nabholz testified to explain that the information in the exhibits pertained to transactions involving charges for hauling rather than selling dirt; however, the record is devoid of any testimony from the other parties involved in exhibits two through five, the questioned transactions, as to whether or not there was a sale of dirt. In short, we find Mr. Nabholz's testimony insufficient, standing alone, to meet the taxpayer's statutory burden in refuting the reasonableness of the assessment. To hold otherwise would be to permit a taxpayer to maintain scant records and after an unsatisfactory tax audit, avoid taxation by merely verbalizing his transactions unsupported by appropriate documentation made at the time of the transactions or by testimony from other parties to the transactions.

Accordingly, the Chancellor's ruling is reversed.

On cross appeal, A & B argues that the Chancellor erred in refusing to grant the company civil damages and attorneys fees claiming that the Commissioner of Revenue and his employees intentionally disregarded tax law. A & B relies upon Ark. Code Ann. § 26-18-809:

> 26-18-809 Civil damages for certain unauthorized collection actions.
>
> (a) IN GENERAL. If, in connection with any collection of state tax with respect to a taxpayer, any employee of the Department of Finance and Administration, Revenue Division, recklessly or intentionally disregards any provision of this title. . .such taxpayer may bring a civil action for damages against the director. . . .

As A & B has presented no evidence to prove that the Commissioner disregarded tax law, we affirm the Chancellor's decision in refusing damages and fees.

Reversed and remanded on direct appeal; affirmed on cross appeal.

GLAZE, J., dissents.

TOM GLAZE, Justice. I dissent. The primary factual issue is whether A & B Dirt Movers sold or merely hauled dirt. In issue at trial were six exhibits each listing business transactions of A & B; the exhibits are set out in the majority opinion. The state now, on appeal and for the first time, concedes exhibits one and six reflect nontaxable transactions; however, it still maintains that exhibits two through five list events that are presumable sale-of-dirt transactions and are taxable. The chancellor, however, found the transactions on *all* six exhibits involved A & B hauling services and not sale transactions.

The majority court reverses the chancellor, and in doing so, finds that the testimony and explanation of these various exhibits and transactions by Mr. Jerry Nabholz, President of A & B, were "insufficient, standing alone, to meet A & B's burden to refute the reasonableness of the state's assessment." In short, the majority simply *disbelieves* Mr. Nabholz's explanation of exhibits two through five and his version that the transactions reflected on them did not involve the sale of dirt. In reaching such a conclusion, the majority court departs from the established rule that, while the supreme court reviews chancery court cases de novo, it recognizes the superior position of the chancellor to weigh issues of credibility and therefore does not reverse unless the chancellor's findings are clearly erroneous. *McElroy* v. *Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991).

Mr. Nabholz testified that he had unneeded dirt he gave away so he could build on his land, and other witnesses, testifying on A & B's behalf, related similar narratives. In these situations, A & B merely charged for hauling free dirt to customer destinations. If believed, such testimony clearly refutes any idea that consideration was paid for the dirt hauled to the customers listed in the four exhibits still in dispute.

This court is in no position to second guess the chancellor on what are strictly factual and credibility issues. The evidence or explanations surrounding exhibits one and six were apparently accepted by the state since the state now concedes transactions listed on them are nontaxable. The chancellor found the remaining four exhibits and related testimony worthy of belief, and this court has no basis to hold otherwise. I would affirm the chancellor's findings.