## WESTERN CARROLL COUNTY AMBULANCE DISTRICT

(aka WCCAD); Bayard Biossat, Jack Faulkner, and William W. Woodward, in Their Official Capacities as Commissioners of WCCAD; City of Eureka Springs, Arkansas; Carroll County, Arkansas; Carolyn Williams, Phillip Jackson, Kay Phillips, Cindy Vowell, and Shirley Doss, in heir Official Capacities as Assessor, County Judge, Collector, Treasurer, and Clerk for Carroll County, Arkansas *v.* C. Rodney JOHNSON, Leonard R. Fowler, and Marvin D. Hoffman

00-1271                                    44 S.W.3d 284

Supreme Court of Arkansas
Opinion delivered May 24, 2001

*John Casteel,* for appellants.

*Oscar Stilley,* for appellees.

RAY THORNTON, Justice. This appeal arises from a grant of a partial summary judgment in an illegal-exaction case. In 1992, the Carroll County Quorum Court adopted ordinance No. 92-13, which created the Western Carroll County Ambulance District and provided for a tax assessment of two mills on both real and personal property. The purpose of the assessment was to acquire vehicles and equipment and was for the maintenance and operation of an ambulance service for the use and benefit of residents and property owners in the district.

On September 22, 1998, appellees, C. Rodney Johnson, Leonard R. Fowler, and Marvin Hoffin, as representatives in a class action filed a complaint against appellees, the Western Carroll County Ambulance District ("WCCAD") and others in their official capacities, alleging that they were taxpayers of Carroll County and that the County did not have the authority to impose the tax on personal property. Other appellants include Bayard Biossat, Jack Faulkner, and William W. Woodward, who are commissioners of WCCAD. Phillip Jackson is the Carroll County Judge to whom service is given in disputes involving Carroll County. Carolyn Williams, Kay Phillips, and Cindy Vowell are the assessor, collector, and treasurer, respectively, of Carroll County. Carroll County and Eureka Springs are political subdivisions of the state of Arkansas.

Carroll County had collected personal property tax for the benefit of WCCAD in the following amounts: $9, 824.00 for 1994, $11,261.82 for 1995, $13,191.26 for 1996, $14,797.79 for 1997, $15,328.38 for 1998, and $15,861.97 for 1999. The total amount of personal property tax collected for the years 1994 through 1999 is $80,265.22.

Appellees filed a motion for partial summary judgment based upon Ark. Code Ann. § 14-282-102 (Repl. 1998), which authorizes an ambulance service district to be formed upon a petition signed by a majority in value and area of the owners of real property within an improvement district and to assess benefits against real property to pay for the service. Alternatively, the statute forms a district by the adoption of an ordinance of the quorum court that imposes a millage property tax and is ratified by a vote of the people. WCCAD responded, alleging that an ambulance district may be formed either by a petition from the real property owners of the proposed district or by a quorum court ordinance and general election. WCCAD acknowledged that if a district is formed by petition of real property owners, then the benefits are to be assessed only against real property. WCCAD argued that if the district is

formed by a quorum court ordinance and a general election, then millages may be imposed upon both real and personal property.

Following a hearing on the matter, the Carroll County Chancery Court granted appellees' motion for partial summary judgment, in compliance with Ark. R. Civ. P. 54(b), ruling that appellants did not have the legal authority to collect a two-mill tax on the personal property of the residents of Western Carroll County Ambulance District and that the collection of such tax constituted an illegal exaction. Appellants now bring an appeal from this order. We disagree with the trial court's ruling and reverse.

For their sole point on appeal, appellants argue that the trial court erred in granting appellees' motion for partial summary judgment based on its finding that, as a matter of law, appellants did not have the legal authority to collect a two-mill tax on the personal property of the residents of Western Carroll County Ambulance District. Specifically, appellants argue that Ark. Code Ann. § 14-282-102(e)(1)(A) provides for an establishment of an ambulance service improvement district by an ordinance ratified by a vote of the people and authorizes the levy of a two-mill tax upon both real and personal property.

Arkansas Code Annotated § 14-282-101 *et seq.* (Repl. 1998) promulgates two methods by which local governments establish, finance, and manage an ambulance service improvement district. Arkansas Code Annotated § 14-282-101 outlines the purpose of these methods:

> It is the purpose and intent of this chapter to authorize the establishment, and to prescribe the procedure for the establishment, of improvement districts for the purpose of providing ambulance services to residents of the districts and to prescribe the procedure for assessing the property in the district to finance the services.

*Id.*

Arkansas Code Annotated § 14-282-102, provides for two methods by which an ambulance service improvement district can be created. The first method, adopted by Act 1221 of 1975, allows a majority of the owners of real property to file a petition with the county court. Ark. Code Ann. § 14-282-102(a). That statute provides:

> (a) Upon the petition of a majority in value and area of the owners of real property in any designated area, it shall be the duty of the county court to lay off into an improvement district the territory described in the petition and to name three (3) commissioners of the district.

*Id.* When this method of forming a district by petition is followed, taxes may only be imposed by an assessment of benefits upon real property. *Id.*

The second method by which an ambulance service district may be created is by an ordinance of the quorum court. That method is prescribed by Ark. Code Ann. § 14-282-102(e)(1)(A), first adopted by Act 498 of 1989, which provides:

> (e)(1)(A) An ambulance service district that is composed of an area within a county as established by the quorum court of the county may be created by ordinance of the quorum court. The ordinance shall designate the area to be served. However, in no event shall the area include less than a whole precinct and all precincts must be contiguous. The ordinance shall also set forth the method the ambulance service district *shall assess the persons residing therein or the property owners having property located therein.*

*Id.* (Emphasis added.) The ordinance of the quorum court is subject to the approval of a majority of voters residing within the boundaries of the district. *Id.*

■■ The issue before us is whether taxes imposed by this second method may be levied against all property, both real and personal. We review issues of statutory construction *de novo*, as it is for this court to decide what a statute means. *Hodges v. Huckabee,* 338 Ark. 454, 995 S.W.2d 341 (1999). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Dunklin v. Ramsay,* 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Burcham v. City of Van Buren,* 330 Ark. 451, 954 S .W.2d 266 (1997).

■ The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Ozark Gas Pipeline v. Arkansas Pub. Serv. Comm'n,* 342 Ark. 591, 29 S.W.3d 730 (2000). Where the language of the statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used.

In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Burford Distributing, Inc. v. Starr*, 341 Ark. 914, 20 S.W.3d 363 (2000).

■ Applying these well-established principles to the interpretation of Ark. Code Ann. § 14-282-102, it is clear that an alternative method of taxation is provided by subsection (e). The key sentence is found in subsection (e) and reads: "The ordinance shall assess *the persons residing therein or the property owners having property located therein*" (emphasis added). The phrase, "assess the persons residing therein," applies to possible assessment of taxes to each person residing within the district, while the disjunctive phrase, "assess . . . the property owners having property located therein [the district]" indicates that all property located within the district is subject to taxation.

■ We have held that there is not the slightest difference between real and personal property except so far as such difference is created by particular statutes. *Hoing v. River Valley Gas Co.*, 196 Ark. 1165, 121 S.W.2d 513 (1938). Here, the statute adopted by Act 498 of 1989 and amended by Act 457 of 1991 does not distinguish between real and personal property, and the principle announced in *Hoing, supra*, means that the word, "property," includes both real and personal property.

 ` Appellees argue that the provisions relating to the creation of a district by petition of the owners of real property, found in subsection (a), limits the tax base for either method of creating an ambulance district to the imposition of assessed benefits upon real property. However, a review of the history of Ark. Code Ann. § 14-282-102 reveals otherwise. *See Ozark Gas Pipeline, supra.* In Act 1221 of 1975, the General Assembly promulgated subsections (a), (b), and (c) of the current statute, which codifies the first method of assessment of real property by a petition of the owners of real property. It was not until 1989 that the General Assembly promulgated subsection (e) for the first time.

■ Act 498 of 1989 promulgated subsection (e) for the first time, and is entitled, "An Act to Amend Arkansas Code 14-282-

102 to Establish an Additional Method of Establishing an Ambulance Service District; and for Other Purposes." Act 498 specifically provides that the assessment provisions of Act 1221 of 1975 are not applicable to the newly established means of forming a district. Arkansas Code Annotated § 14-282-102(e) states:

> An ambulance service district created by this procedure shall be exempt from the assessment procedures set out in this chapter. The taxes collected pursuant to the ordinance shall be administered by the county as an enterprise fund, but shall be levied and collected as county taxes.

Ark. Code Ann. § 14-282-102(e)(3). In other words, subsection (e) establishes an alternative method of imposing a tax millage upon all property within the district.

■ We hold that the intent of the legislature in adopting an alternative means of forming an ambulance service district by the vote of all eligible voters in the district, as prescribed by subsection (e), allows for the imposition of taxes upon both real and personal property. *Hoing, supra.* Accordingly, we reverse the trial court's grant of partial summary judgment.

Reversed and remanded.

BROWN and IMBER, JJ., dissent.

Annabelle Clinton Imber, Justice, dissenting. I disagree with the majority's holding that the amended version of Chapter 282, Ambulance Service Improvement Districts, specifically Ark. Code Ann. 14-282-102(e)(1)(A), includes personal property. While I agree that the amended version of the statute uses plain and unambiguous language, there is no basis for the conclusion that the term property as used in section 14-282-102 refers to anything other than real property.

The basic rule of statutory construction is to give effect to the intent of the legislature. *See Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). The legislature used the words "real property" and "property" interchangeably in section 14-282-102(a) and (b) when it designated the original method of creating improvement districts. In Section 14-282-102(b), the statute states the purpose of the ambulance district to be for the "benefit of the *property holders* within the district." *Id.* The language is clarified to indicate that "the ambulance services would be a benefit to all the *real property*

located in the district. *Id.* (emphasis added). Construing this language just as it reads and giving every word meaning and effect, "property" refers to the real property within the described area.

How then does the term "property" take on a new meaning in section 14-282-102(e)(1)(A)? The majority takes an unwarranted leap in its construction of the statute by assuming that because the legislature set out to create an alternative method of creating and funding an ambulance district, they assigned multiple meanings to a single term used within section 14-282-102. In order to make this leap the majority relies on this court's statement in *Hoing v. River Valley Gas Co.*, 196 Ark 1165,1169, 121 S.W.2d 513, 515(1938) that "[i]n this country, there is not the slightest difference between real and personal estate except so far as such difference is created by statute." This expression of the law, used historically in he context of fixtures, objects appurtenant, etc., does little more in the present context than beg the question. The statute at issue in this case, when enacted as Act 1221 of 1975 and when amended by the enactment of Act 498 of 1989, did in fact differentiate between real and personal property.

The amended language adopted by Act 498 of 1989 includes an additional method to form an ambulance improvement district, permitting formation by ordinance of the quorum court. This alternate method demands that the ordinance "set forth the method the ambulance service shall assess the persons residing therein or the *property owners* having property located therein" *Id.* (emphasis added). The use of the term "property" in this amended version should be construed within the total context of section 14-282-102 to include the real property located within the district.

In any event, if the language used in the amendment were to be considered ambiguous, the cardinal rule in construing tax legislation requires that, "a tax cannot be imposed except by express words indicating that purpose, andwhere there is ambiguity or doubt it must be resolved in favor of the taxpayer." *Pledger v. The Grapevine, Inc.*, 302 Ark. 18, 786 S.W.2d 825 (1990). Another rule of tax law construction is that express designation for one thing mayproperly be understood to exclude another. *Leathers v. A&B Dirt Movers, Inc.* 311 Ark. 320, 844 S.W.2d 314 (1992). Under these rules of statutory construction, the term "property" as used in Section 14-282-102(e)(1)(A) should be construed to mean real

BROWN, J., joins in this dissent.