LAWYERS SURETY CORPORATION *v.* George FLOWERS

CA 01–413                                    66 S.W.3d 669

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered February 6, 2002

*Joel Lynn Taylor*, for appellant.

*Helen Rice Grinder* and *George Stephens*, for appellee.

Andree Layton Roaf, Judge. Lawyers Surety Corporation ("Lawyers Surety") appeals from a circuit court order reversing a determination by the Director of the Arkansas State Police Used Motor Vehicle Administration (UMVA). The UMVA had found Lawyers Surety not liable to appellee George Flowers for his claim against a bond it had written in connection with the issuance of a used-car-dealer license to Denver Haus; Flowers prevailed in the appeal of the UMVA decision to circuit court. On appeal, Lawyers Surety argues 1) that the trial court exceeded the scope of review of administrative agency cases; 2) that the trial court erred in finding that there was sufficient evidence to revoke or suspend Haus's used-car-dealer license; and 3) that the UMVA erred in finding that it could not raise the issue of whether a partnership existed between Flowers and Haus. Appellee George Flowers cross-appeals and argues that because Lawyers Surety wrongfully refused to pay him insurance benefits, the trial court erred in denying him attorney fees and penalties pursuant to Ark. Code Ann. § 23-79-208 (1999). We reverse the circuit court's ruling on direct appeal, and, consequently, the cross-appeal is moot and need not be addressed.

The following facts that gave rise to Flowers's claim against Lawyers Surety are based primarily upon allegations made by Flowers against Haus, and are not disputed by either party. In 1987, George Flowers and Denver Haus agreed to start a partnership business called Star Body Shop and Auto Sales, to purchase, repair, and resell cars. However, Flowers and Haus did not put their agreement in writing. Each man agreed to contribute an initial payment of $5,000 to the partnership. Haus was unable to contribute his share, so Flowers took a promissory note in exchange for his contributing additional money to the partnership.

On December 8, 1987, Haus applied to Lawyers Surety for a Used Motor Vehicle Dealer's Bond, which is required by Ark. Code Ann. § 23-112-607(b)(2) (2001), in order to obtain a used-

car–dealer license. Star Body Shop was listed as the bond principal. On December 12, 1987, Haus applied for a used–car–dealer license. This application listed Haus and Flowers as partners in Star Body Shop. However, Flowers's name was crossed out on the application. Haus and Flowers then leased a building and opened a partnership account in which both were authorized signators. During the initial weeks of operation, Flowers contributed additional capital to the partnership. By February 1988, Flowers suspected Haus of making unauthorized withdrawals from the partnership account and of stealing car titles. Haus had also failed to make any payments toward Flowers's initial loan.

As a result of the disagreement, Haus established a new dealership just down the street from Star Body Shop and Auto Sales. Haus failed to transfer the license to the new dealership. Flowers attempted to operate the original dealership; however, Lawyers Surety refused to transfer the bond for Star Body Shop as it claimed that it lacked notice of a partnership. Flowers was later added to the bond as a co–principal.

During that same year, 1988, Flowers sued Haus for breach of contract and conversion of partnership funds, and was granted a default judgment for over $21,000. After Lawyers Surety refused to pay the judgment, Flowers sued it in Faulkner County Circuit Court in 1991, but apparently did not obtain a judgment in this action. Flowers next attempted to pursue his claim through the Arkansas Motor Vehicle Commission, and eventually filed a claim with the UMVA in 1998, where he was granted a hearing on his claim on August 4, 1998.

The UMVA hearing officer found in favor of Lawyers Surety, and Flowers appealed the decision to circuit court. The circuit court reversed the decision of the UMVA and found in pertinent part that Haus had willfully committed fraud against Flowers, that such a violation of the law constituted ground for suspension or revocation of Haus's Star Body Shop license, and that the surety bond issued by Lawyers Surety was meant to comply with provisions of Ark. Code Ann. § 23–112–302(c)(3) (2001), by indemnifying "for any loss sustained by any person by reason of the acts of the licensees bonded when such acts constituted grounds for the suspension or revocation of the license." The trial court ordered Lawyers Surety to pay Flowers $25,000, the amount of the bond, as his total loss, including interest and costs, exceeded the amount of the bond. However, the trial court denied Flowers's request for attorney's fees. From that decision comes this appeal and cross-appeal.

■■ In an appeal from a circuit court's decision regarding a ruling made by an administrative agency, the appellate court's review is directed not toward the circuit court, but toward the decision of the agency. That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *McQuay v. Arkansas State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999); *Social Work Licensing Bd. v. Moncebaiz*, 332 Ark. 67, 962 S.W.2d 797 (1998); *Files v. Arkansas State Highway & Transp. Dep't*, 325 Ark. 291, 925 S.W.2d 404 (1996). Our review of administrative decisions is limited in scope. Due deference is afforded to decisions of the administrative agency. *Culpepper v. Board. of Chiropractic Exam.*, 343 Ark. 467, 36 S.W.3d 335 (2001). Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Id.* With these standards in mind, we address the arguments raised by Lawyers Surety on direct appeal.

Lawyers Surety argues that the trial court erred in reversing the decision of the administrative agency when it found in favor of Flowers and ordered payment of $25,000 to Flowers. It argues that the trial court exceeded the scope of its review of the UMVA because the administrative agency's decision was supported by substantial evidence and was not made arbitrarily or capriciously, and also argues that the agency's decision should be upheld because it was supported by substantial evidence. These arguments have merit.

The hearing officer found that Ark. Code Ann. § 23-112-308 (1987) places certain duties on used-car dealers as a means of protecting the public and manufacturers from fraudulent acts of car dealers, but does not create obligations to general creditors or used-car dealers' business partners. When Flowers's claim arose in 1987, Ark. Code Ann. § 23-112-308 (1987), entitled "Denial, Revocation, and Suspension," stated in pertinent part:

> (a) the commission may deny any application for a license or revoke or suspend a license after it has been granted, for any of the following reasons:
>
>> (1) On satisfactory proof of the unfitness of the applicant or licensee in any application for license under the provisions of this chapter;

(2) For fraud practiced or any material misstatement made by an applicant in any application for license under the provisions of this chapter;

(3) For any willful failure to comply with any provision of this chapter or with any rule or regulation promulgated by the commission under authority vested in it by this chapter;

(4) Change of condition after license is granted or failure to maintain the qualifications for license;

(5) Continued or flagrant violation of any of the provisions of this chapter or of any of the rules or regulations of the commission;

(6) For any willful violation of any law relating to the sale, distribution, or financing of motor vehicles;

(7) Willfully defrauding any retail buyer to the buyer's damage;

(8) Willful failure to perform any written agreement with any retail buyer;

(9) Being a manufacturer who fails to specify the delivery and preparation obligations of its motor vehicle dealers, as is required for the protection of the buying public, prior to delivery of new motor vehicles to retail buyers;

(10) On satisfactory proof that any manufacturer, distributor, distributor branch, or division, or factory branch or division has unfairly and without due regard to the equities of the parties or to the detriment of the public welfare failed to properly fulfill any warranty agreement or to adequately and fairly compensate any of its motor vehicle dealers for labor, parts, or incidental expenses incurred by the dealer with regard to factory warranty agreements performed by the dealer;

(11) For the commission of any act prohibited by §§ 23-112-301—307, 23-112-402—403, or the failure to perform any of the requirements of those sections;

(12) Using or permitting the use of special license plates assigned to him for any other purpose than those permitted by law;

(13) Disconnecting, turning back, or resetting the odometer of any motor vehicle in violation of state and federal law;

(14) Accepting an open assignment of title or bill of sale for a motor vehicle which is not completed by identifying the licensee as the purchaser or assignee of the motor vehicle;

(15) Failure to notify the commission of a change in ownership, location, or franchise, or any other matters the commission may require by regulation. The notification shall be in written form and submitted to the commission at least fifteen (15) days prior to the effective date of the change;

(16) Failure to endorse and deliver an assignment and warranty of title to the buyer pursuant to § 27-14-902.

Arkansas Code Annotated section 23-112-302(c)(4) (1987) provided that the corporate surety bond be executed in the "name of the State of Arkansas for the benefit of *any aggrieved party.*" Ark. Code Ann. § 23-112-302(c)(4) (1987). (Emphasis added.) Likewise, Ark. Code Ann. § 23-112-302(c)(3) (1987) provided that the bond covers "any loss sustained by *any person*" due to acts of the licensee that would subject the licensee to suspension or revocation of his license. (Emphasis added.) The circuit court based its reversal of the agency decision primarily upon this statutory provision.

█ However, the hearing officer found that the statutorily-mandated bond only protects manufacturers and the general public from fraudulent actions by the dealer, and we agree. Section 23-112-308(a) makes specific references throughout to retail buyers in the context of protecting them from fraud or non-performance by licensed car dealers. In fact, used-motor-vehicle dealers were brought within the ambit of the motor vehicle dealers statutory and licencing scheme by Act 1032 of 1985, in which the emergency clause provided in pertinent part:

It is hereby found and determined by the General Assembly that neither the Arkansas Motor Vehicle Commission nor other board or commission presently have power to license and regulate dealers, salesmen, wholesalers who deal in *used motor vehicles,* motor vehicles lessors or auto auctions and that authority to regulate the aforesaid

functions of the motor vehicle industry is necessary to *prevent and remedy public injury in motor vehicle transactions.*

(Emphasis added.) Moreover, it is well settled that we may also consider subsequent amendments to statutes as evidence of legislative intent. *Bourne v. Bd. of Trustees,* 347 Ark. 19, 59 S.W.3d 432 (2001); *Arkansas County v. Desha County,* 342 Ark. 135, 27 S.W.3d 379 (2000); *Ford v. Keith,* 338 Ark. 487, 996 S.W.2d 20 (1999). In this regard, there were several pertinent amendments enacted after Flowers's claim arose in 1987. In the subchapter entitled "Used Motor Vehicle Buyers Protection," the following 1993 legislative declaration is found in Ark. Code Ann. § 23-112-601 (Supp. 1999):

> (a) The General Assembly hereby declares that the public interest is affected by the sale and distribution of used motor vehicles, and it is recognized that a significant factor of the inducement in making *a sale of a used motor vehicle to a member of the general public is* the trust and confidence of the purchaser in the retail dealer from whom the purchase is made, with the expectancy that the dealer will remain in business to stand behind and provide service for the motor vehicle purchased.

> (b) It is therefore found to be necessary to license used motor vehicle dealers, and to prohibit certain acts and set penalties for violations and perpetration of certain acts . . . in order to prevent fraud, improper impositions, and other abuses upon the citizens of this state. . . .

(Emphasis added.)

Finally, Ark. Code Ann. § 23-112-607 (Supp. 1999), entitled "Dealer License," also enacted in 1993, provides in pertinent part:

> (a)(1) Persons wishing to obtain a used motor vehicle dealer's license shall submit a fully executed application on such used motor vehicle dealer application forms as may be prescribed by the Department of Arkansas State Police.

> * * *

> (b) The department shall require . . . (2) a corporate surety bond in the sum of at least twenty-five thousand dollars ($25,000);

> * * *

(c)(2) The bond shall be an indemnity for any loss and reasonable attorney's fees sustained *by a retail buyer by reason of the acts of the person bonded when such act constitutes a violation of the law.*

(Emphasis added.)

■ In sum, from our review of the relevant statutory language, including amendments enacted since 1987, we conclude that there is substantial evidence to support the agency's decision that the statutory scheme, including the used motor vehicle dealer licensing requirements, was intended by the legislature to protect the public in retail transactions with used car dealers, as opposed to general creditors or business partners such as Flowers, and we reverse the circuit court's order on this point.

Lawyers Surety also contends that the UMVA erred in finding that it was precluded from arguing to the agency the existence of a partnership between Haus and Flowers because Lawyers Surety was unaware of the existence of the partnership at the time the bond was issued. This is clearly a contingent argument should we affirm on Lawyers Surety's first two points, and is directed toward the agency decision rather than to the circuit court's ruling. Consequently, because we are reversing the circuit court's ruling on Lawyers Surety's first arguments, we do not address this issue or the propriety of Lawyers Surety challenging both the circuit court and agency decisions in this appeal.

■ On cross-appeal, Flowers contends that the circuit court erred in denying his motion under Ark. Code Ann. § 23-79-208 (2001), which allows recovery of attorney's fees when a surety or insurer wrongfully refuses to pay benefits under an insurance policy. However, this issue is moot because of our reversal of the trial court's decision, and we need not reach it.

Reversed and dismissed.

STROUD, CJ., and ROBBINS, HART, NEAL, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I disagree with the majority and would hold 1) that the clear and all-inclusive language used in Arkansas Code Annotated section 23-112-302 (Supp. 2001), which provides indemnity for any loss sustained by any person, covers losses sustained by individuals who are

in privity of a partnership, 2) that the agency's finding that there was a lack of evidence as to the acts of the bonded principal sufficient to revoke the dealer's license is not supported by substantial evidence and that it is arbitrary and capricious, and 3) that appellant failed to properly preserve the issue of partnership for appellate review. In view of my position, I would reverse and remand appellee's cross appeal for further proceedings to occur on appellee's claim for attorney's fees and penalties pursuant to Arkansas Code Annotated section 23-79-208(a)(1) (Supp. 2001).

### Statutory Construction

In *Western Carroll Cty. Ambulance Dist. v. Johnson*, 345 Ark. 95, 44 S.W.3d 284 (2001), our supreme court outlined the procedure for statutory construction as follows:

> We review issues of statutory construction *de novo*, as it is for this court to decide what a statute means. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction.
>
> The basic rule of statutory construction is to give effect to the intent of the General Assembly. Where the language of the statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent.

*Id.* at 99-100, 44 S.W.3d at 286-87. (Citations omitted.)

The Arkansas Motor Vehicle Commission Act, as codified by Arkansas Code Annotated sections 23-112-103 to 509, creates certain rules and regulations in regard to motor-vehicle dealers. Section 23-112-302 requires that an individual serving in the capacity of a used motor vehicle dealer complete a license and secure a surety bond. Section 23-112-302(c)(3) (Supp. 2001) provides that

the surety bond "shall be an indemnity for *any loss sustained by any person by reason of the acts of the person bonded when those acts constitute grounds for the suspension or revocation of his license.*" (Emphasis added.)

Section 23-112-308 lists enumerated reasons for which the Commission may deny an application or revoke or suspend a license, including: fraud practiced or a material misstatement made by an applicant in any application for license under the provisions of the chapter; failure to comply with any provision of the chapter or to comply with any rule or regulation promulgated by the commission; any violation of any law relating to the sale, distribution, or financing of motor vehicles; defrauding a retail buyer to the buyer's damage; selling or attempting to sell vehicles from a location other than the location specified on the license; failure to notify the commission of a change in location. *See* Ark. Code Ann. § 23-112-308.

Significantly, section 23-112-302 refers to section 23-112-308 indirectly by its use of the language "when those acts constitute grounds for the suspension or revocation of his license." Section 23-112-308 lists grounds for suspension or revocation. In applying our rules of statutory construction to an interpretation of section 23-112-308 in light of section 23-112-302, the phrase "any loss sustained by any person" is all inclusive. It would appear that the legislature did not intend to restrict the language to provide coverage for the losses sustained by the act of a bonded principal to individuals who are not involved in a partnership arrangement, but to exclude coverage to individuals who are engaged in a partnership. Indeed, sections 23-112-302 and 23-112-308 must be read together, giving the words their ordinary meaning, to ensure that neither section is left void. The legislature recently updated the Arkansas Motor Vehicle Commission Act by its enactment of Act 1053 of 2001. It retained the inclusive language "any loss sustained by any person." Thus, I would conclude that the legislature did not intend to restrict the application of section 23-112-302.

*Whether the Circuit Court Exceeded its Scope of Review by Deciding that the Agency's Finding was not Supported by Substantial Evidence and that the Agency's Finding was Arbitrary, Capricious, and an Abuse of Discretion*

The rules governing a judicial review of administrative findings are the same for circuit and appellate courts. *See Hector v. Arkansas*

*Soil & Water Conservation Comm'n*, 47 Ark. App. 177, 888 S.W.2d 312 (1994). When reviewing an agency decision, a *de novo* review of the record by the circuit court or appellate court is not warranted. *See Arkansas State Police Comm'n v. Smith, supra.* Rather, the examination of the record is limited to determining whether substantial evidence exists to support the agency's finding and whether the agency's decision is arbitrary, capricious, or represents an abuse of discretion. *See Arkansas State Police Comm'n v. Smith, supra.*

The circuit court must query whether substantial evidence supports the findings made by the agency, not whether the evidence would have supported a different conclusion. *See Arkansas State Police Comm'n v. Smith, supra.* In order to successfully challenge a finding of substantial evidence, a party must show that the proof before the agency was so nearly undisputed that fair minded individuals could not have reached the conclusion reached by the agency. *See Arkansas State Police Comm'n v. Smith, supra.* Evidence is given its strongest probative force in favor of the agency's decision. *See Arkansas State Police Comm'n v. Smith, supra.*

Arkansas Code Annotated section 23-112-301(d)(1) (Supp. 2001) mandates that no person shall engage in the business of selling, buying or exchanging motor vehicles, unless the person holds a valid license issued by the Arkansas Motor Vehicle Commission for the makes of motor vehicles being bought, sold, or exchanged. License applications must be verified by oath or affirmation of the applicants. *See* Ark. Code Ann. § 23-112-302(a)(i) (Supp. 2001). In addition, the application must be accompanied by the filing with the Commission of a surety bond, which shall be in effect upon the applicant's being licensed and shall be conditioned upon the applicant abiding by the provisions of section 23-112-302. *See* Ark. Code Ann. § 23-112-302(c)(2) (Supp. 2001).

In the present case, the agency specifically found that an application was submitted to the Commission stating that Star Body and Auto Sales was owned by an individual, Denver Haus. It then stated that it was presumed that the bond was issued as stated to Denver Haus as Star Body Shop. Given the agency's conclusion that Haus was acting as Star Body Shop, any unlawful actions of Haus that constituted grounds for suspension or revocation of the dealer's license would fall within the ambits of section 23-112-302. Second, the language in section 23-112-302 provides indemnity for *any loss* sustained by *any person*, payable upon receipt by the Commission of a final judgment from an Arkansas court of competent jurisdiction. The agency decision acknowledged that appellee's complaint

alleged that Haus "stole" certain certificates of title. This clearly falls within section 23-112-308(6), willful violation of any law relating to the sale, distribution, or financing of motor vehicles. However, the agency concluded that appellee was not a member of the general public such as to trigger the protection of the Arkansas Motor Vehicle Commission Act, based on its finding that appellee's claim that Haus "stole" certain certificates from him was a mere allegation that could not be reached due to a lack of evidence.

Substantial evidence existed that Haus's conduct fell within the guidelines to revoke his license because a court of competent jurisdiction had previously determined that appellee had presented prima facie, undisputed evidence that Haus was liable for the allegations cited by appellee in the original complaint. These allegations included appellee's claim that Haus made material misstatements in the license application and defrauded appellee on the sale and financing of motor vehicles by stealing certificates of title while acting in the capacity of Star Body Shop and Auto Sales, as evidenced by a default judgment that found Haus liable to appellee for fraudulent conduct and awarded appellee $21,098. Haus's action of defrauding appellee by stealing certificates of title while acting in his capacity as Star Body Shop and Auto Sales constituted a willful violation of the law relating to the sale and financing of motor vehicles and constituted grounds for the suspension or revocation of the license issued to Haus as Star Body Shop. Additionally, Haus's action of moving the location of the dealership to another location without notifying the Commission and making material misstatements in the license application constituted grounds for the suspension or revocation of his dealer's license. Thus, the agency's decision to ignore the default judgment and deny appellee's claim against the bond because of a lack of evidence represented an abuse of discretion.

*Partnership Between Haus and Flowers*

For its second point on appeal, appellant argues that the administrative agency erroneously precluded it from arguing that appellee is liable as a partner in the bonded principal. Appellee correctly responds that appellant is precluded from addressing this issue on appeal due to appellants failure to file a cross-appeal on the agency's adverse ruling.

*Failure of Trial Court to Grant Attorney's*
*Fees and Penalties*

Arkansas Code Annotated section 23-79-208(a)(1) (Supp. 2001) reads as follows:

> In all cases where loss occurs and the . . . surety . . . shall fail to pay the losses within the time specified in the policy after demand made therefore, the person, firm, corporation or association shall be liable to pay the holder of the policy or his assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney fees for the prosecution and collection of the loss.

Our supreme court addressed section 23-79-208 in *Newcourt Fin., Inc. v. Canal Ins.*, 341 Ark. 181, 17 S.W.3d 83 (2000), and held that a loss payee is an insured because it could sue to enforce the policy under which it would be paid.

Appellee received a default judgment against Denver Haus, acting as Star Body Shop, in July 1988 and exhausted his administrative remedies in 1993. Appellant refused to pay the claim. Appellee proceeded before the administrative agency, and the agency entered a decision that was reversed by the circuit court. Given my recommendation to reverse the agency decision as arbitrary and capricious, I would remand appellee's claim for attorney's fees pursuant to section 23-79-208.